## CROMWELL *v.* COUNTY OF SAC.

1. The difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action, stated. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.

2. In an action against a county in Iowa upon certain interest coupons originally attached to bonds issued by the county for the erection of a court-house, it was found and determined that the bonds were void as against the county in the hands of parties who did not acquire them before maturity for value; and, inasmuch as the plaintiff in that action had not proved that he had given such value, it was adjudged that he was not entitled to recover. *Held,* that the judgment did not estop the plaintiff, holding other bonds of the same series, and other coupons attached to the same bonds as the coupons in the original action, from showing, in a second action against the county, that he acquired such other bonds and coupons for value before maturity.

3. The finding in one action that the plaintiff therein is the holder and owner of certain coupons in suit does not estop the defendant from showing, in another action, that such plaintiff prosecuted the first action for the use and benefit of the plaintiff in the second action. The finding only establishes the fact that such plaintiff held the legal title to the coupons, which was sufficient for the purpose of the action, and was not inconsistent with an equitable and beneficial interest in another.

ERROR to the Circuit Court of the United States for the District of Iowa.

The action was on certain bonds and coupons thereto attached, issued by the county of Sac, in the State of Iowa. The facts are sufficiently stated in the opinion of the court. The defendant obtained judgment, and the plaintiff brought the case here.

*Mr. John N. Rogers* for the plaintiff in error.

*Mr. Galusha Parsons, contra.*

MR. JUSTICE FIELD delivered the opinion of the court.

This was an action on four bonds of the county of Sac, in

the State of Iowa, each for $1,000, and four coupons for interest, attached to them, each for $100. The bonds were issued in 1860, and were made payable to bearer, in the city of New York, in the years 1868, 1869, 1870, and 1871, respectively, with annual interest at the rate of ten per cent a year.

To defeat this action, the defendant relied upon the estoppel of a judgment rendered in favor of the county in a prior action brought by one Samuel C. Smith upon certain earlier maturing coupons on the same bonds, accompanied with proof that the plaintiff Cromwell was at the time the owner of the coupons in that action, and that the action was prosecuted for his sole use and benefit.

The questions presented for our determination relate to the operation of this judgment as an estoppel against the prosecution of the present action, and the admissibility of the evidence to connect the present plaintiff with the former action as a real party in interest.

In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defences were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law

are concerned, as though the defences never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defence actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever.

But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.

The difference in the operation of a judgment in the two classes of cases mentioned is seen through all the leading adjudications upon the doctrine of estoppel. Thus, in the case of *Outram* v. *Morewood*, 3 East, 346, the defendants were held estopped from averring title to a mine, in an action of trespass for digging out coal from it, because, in a previous action for a similar trespass, they had set up the same title, and it had been determined against them. In commenting upon a decision cited in that case, Lord Ellenborough, in his elaborate opinion, said: "It is not the recovery, but the matter alleged by the party, and upon which the recovery proceeds, which creates the estoppel. The recovery of itself in an action of trespass is only a bar to the future recovery of damages for the same injury; but the estoppel precludes parties and privies from contending to the contrary of that point or matter of fact, which, having been once distinctly put in issue by them, or by those to whom they are privy in estate or law, has been, on such issue joined, solemnly found against them." And in the

case of *Gardner* v. *Buckbee*, 3 Cowen, 120, it was held by the
Supreme Court of New York that a verdict and judgment in
the Marine Court of the city of New York, upon one of two
notes given upon a sale of a vessel, that the sale was fraudu-
lent, the vessel being at the time unseaworthy, were conclusive
upon the question of the character of the sale in an action
upon the other note between the same parties in the Court of
Common Pleas. The rule laid down in the celebrated opinion
in the case of the Duchess of Kingston was cited, and fol-
lowed: " That the judgment of a court of concurrent jurisdic-
tion directly upon the point is as a plea a bar, or as evidence
conclusive between the same parties upon the same matter
directly in question in another court."

These cases, usually cited in support of the doctrine that the
determination of a question directly involved in one action is
conclusive as to that question in a second suit between the
same parties upon a different cause of action, negative the
proposition that the estoppel can extend beyond the point
actually litigated and determined. The argument in these
cases, that a particular point was necessarily involved in the
finding in the original action, proceeded upon the theory that,
if not thus involved, the judgment would be inoperative as an
estoppel. In the case of *Miles* v. *Caldwell*, reported in the
2d of Wallace, a judgment in ejectment in Missouri, where
actions of that kind stand, with respect to the operation of a
recovery therein, as a bar or estoppel, in the same position as
other actions, was held by this court conclusive, in a subsequent
suit in equity between the parties respecting the title, upon
the question of the satisfaction of the mortgage under which
the plaintiff claimed title to the premises in the ejectment,
and the question as to the fraudulent character of the mortgage
under which the defendant claimed, because these questions
had been submitted to the jury in that action, and had been
passed upon by them. The court held, after full consideration,
that in cases of tort, equally as in those arising upon contract,
where the form of the issue was so vague as not to show the
questions of fact submitted to the jury, it was competent to
prove by parol testimony what question or questions of fact
were thus submitted and necessarily passed upon by them; and

by inevitable implication also held that, in the absence of proof in such cases, the verdict and judgment were inconclusive, except as to the particular trespass alleged, whatever possible questions might have been raised and determined.

But it is not necessary to take this doctrine as a matter of inference from these cases. The precise point has been adjudged in numerous instances. It was so adjudged by this court in the case of *The Washington, Alexandria, & Georgetown Steam Packet Co.* v. *Sickles*, reported in the 24th of Howard. In that case, an action was brought upon a special parol contract for the use of Sickles's cut-off for saving fuel in the working of steam-engines, by which the plaintiffs, who had a patent for the cut-off, were to attach one of their machines to the engine of the defendants' boat, and were to receive for its use three-fourths of the saving of fuel thus produced, the payments to be made from time to time when demanded. To ascertain the saving of fuel an experiment was to be made in a specified manner, and the result taken as the rate of saving during the continuance of the contract. The plaintiffs in their declaration averred that the experiment had been made, at the rate of saving ascertained, and that the cut-off had been used on the boat until the commencement of the suit. In a prior action against the same defendant for an instalment due, where the declaration set forth the same contract in two counts, the first of which was similar to the counts in the second action, and also the common counts, the plaintiffs had obtained verdict and judgment; and it was insisted that the defendant was estopped by the verdict and judgment produced from proving that there was no such contract as that declared upon, or that no saving of fuel had been obtained, or that the experiment was not made pursuant to the contract, or that the verdict was rendered upon all the issues, and not upon the first count specially. The Circuit Court assented to these views, and excluded the testimony offered by the defendants to prove those facts. But this court reversed the decision, and held that the defendants were not thus estopped.

" The record produced by the plaintiffs," said the court, " showed that the first suit was brought apparently upon the same contract as the second, and that the existence and validity

of that contract might have been litigated. But the verdict might have been rendered upon the entire declaration, and without special reference to the first count. It was competent to the defendants to show the state of facts that existed at the trial, with a view to ascertain what was the matter decided upon by the verdict of the jury. It may have been that there was no contest in reference to the fairness of the experiment, or to its sufficiency to ascertain the premium to be paid for the use of the machine at the first trial, or it may have been that the plaintiffs abandoned their special counts and recovered their verdict upon the general counts. The judgment rendered in that suit, while it remains in force, and for the purpose of maintaining its validity, is conclusive of all the facts properly pleaded by the plaintiffs; but when it is presented as testimony in another suit, the inquiry is competent whether the same issue has been tried and settled by it."

It is not believed that there are any cases going to the extent that because in the prior action a different question from that actually determined might have arisen and been litigated, therefore such possible question is to be considered as excluded from consideration in a second action between the same parties on a different demand, although loose remarks looking in that direction may be found in some opinions. On principle, a point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action.

Various considerations, other than the actual merits, may govern a party in bringing forward grounds of recovery or defence in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own situation at the time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction. A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit : it does not make the allegations of the declaration or complaint evidence in an action upon a different claim. The declaration

may contain different statements of the cause of action in different counts. It could hardly be pretended that a judgment by default in such a case would make the several statements evidence in any other proceeding. *Boyleau* v. *Rutlin*, 2 Exch. 665, 681; *Hughes* v. *Alexander*, 5 Duer, 493.

The case of *Howlett* v. *Tarte*, 10 C. B. N. S. 813, supports this view. That was an action for rent, under a building agreement. The defendant pleaded a subsequent agreement, changing the tenancy into one from year to year, and its determination by notice to quit before the time for which the rent sued for was alleged to have accrued. The plaintiff replied that he had recovered a judgment in a former action against the defendant for rent under the same agreement, which had accrued after the alleged determination of the tenancy, in which action the defendant did not set up the defence pleaded in the second action. On demurrer, the replication, after full argument, was held bad. In deciding the case, Mr. Justice Willes said: " It is quite right that a defendant should be estopped from setting up in the same action a defence which he might have pleaded, but has chosen to let the proper time go by. But nobody ever heard of a defendant being precluded from setting up a defence in a second action because he did not avail himself of the opportunity of setting it up in the first action. . . . I think we should do wrong to favor the introduction of this new device into the law." Mr. Justice Byles said: " It is plain that there is no authority for saying that the defendant is precluded from setting up this defence." Mr. Justice Keating said: " This is an, attempt on the part of the plaintiff to extend the doctrine of estoppel far beyond what any of the authorities warrant."

The language of the Vice-Chancellor, in the case of *Henderson* v. *Henderson*, 3 Hare, 100, 115, is sometimes cited as expressing a different opinion; but, upon examining the facts of that case, it will appear that the language used in no respect conflicts with the doctrine we have stated. In that case, a bill had been filed in the Supreme Court of Newfoundland, by the next of kin of an intestate, against A. and others, for an account of an estate and of certain partnership transactions. A decree was rendered against A., upon which the next of kin brought actions in England. A. then filed a bill there against the next

of kin and personal representative of the intestate, stating that the intestate's estate was indebted to him, and alleging various errors and irregularities in the proceedings in the Supreme Court of the island, and praying that the estate of the intestate might be administered, the partnership accounts taken, and the amount of the debt due to him ascertained and paid. A demurrer to the bill was allowed for want of equity, on the ground that the whole of the matters were in question between the parties, and might properly have been the subject of adjudication in the suit before that court. It was with reference to the necessity of having the subject of particular litigation, as a whole, at once before the court, and not by piecemeal, that the Vice-Chancellor said : —

"In trying this question, I believe I state the rule of court correctly, that when a given matter becomes the subject of litigation in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in controversy, but which was not brought forward, only because they have, from negligence, inadvertence, or even accident, omitted part of the case. The plea of *res adjudicata* applies, except in special cases, not only to the points upon which the court was required by the parties to form an opinion, and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time."

There is nothing in this language, applied to the facts of the case, which gives support to the doctrine that, whenever in one action a party might have brought forward a particular ground of recovery or defence, and neglected to do so, he is, in a subsequent suit between the same parties upon a different cause of action, precluded from availing himself of such ground.

If, now, we consider the main question presented for our determination by the light of the views thus expressed and the authorities cited, its solution will not be difficult. It appears from the findings in the original action of Smith, that the county of Sac, by a vote of its people, authorized the issue of

bonds to the amount of $10,000, for the erection of a court-house; that bonds to that amount were issued by the county judge, and delivered to one Meserey, with whom he had made a contract for the erection of the court-house; that immediately upon receipt of the bonds the contractor gave one of them as a gratuity to the county judge; and that the court-house was never constructed by the contractor, or by any other person pursuant to the contract. It also appears that the plaintiff had become, before their maturity, the holder of twenty-five coupons, which had been attached to the bonds, but there was no finding that he had ever given any value for them. The court below held, upon these findings, that the bonds were void as against the county, and gave judgment accordingly. The case coming here on writ of error, this court held that the facts disclosed by the findings were sufficient evidence of fraud and illegality in the inception of the bonds to call upon the holder to show that he had given value for the coupons; and, not having done so, the judgment was affirmed. Reading the record of the lower court by the opinion and judgment of this court, it must be considered that the matters adjudged in that case were these: that the bonds were void as against the county in the hands of parties who did not acquire them before maturity and give value for them, and that the plaintiff, not having proved that he gave such value, was not entitled to recover upon the coupons. Whatever illegality or fraud there was in the issue and delivery to the contractor of the bonds affected equally the coupons for interest attached to them. The finding and judgment upon the invalidity of the bonds, as against the county, must be held to estop the plaintiff here from averring to the contrary. But as the bonds were negotiable instruments, and their issue was authorized by a vote of the county, and they recite on their face a compliance with the law providing for their issue, they would be held as valid obligations against the county in the hands of a *bona fide* holder taking them for value before maturity, according to repeated decisions of this court upon the character of such obligations. If, therefore, the plaintiff received the bond and coupons in suit before maturity for value, as he offered to prove, he should have been permitted to show that fact. There was

nothing adjudged in the former action in the finding that the plaintiff had not made such proof in that case which can preclude the present plaintiff from making such proof here. The fact that a party may not have shown that he gave value for one bond or coupon is not even presumptive, much less conclusive, evidence that he may not have given value for another and different bond or coupon. The exclusion of the evidence offered by the plaintiff was erroneous, and for the ruling of the court in that respect the judgment must be reversed and a new trial had.

Upon the second question presented, we think the court below ruled correctly. Evidence showing that the action of Smith was brought for the sole use and benefit of the present plaintiff was, in our judgment, admissible. The finding that Smith was the holder and owner of the coupons in suit went only to this extent, that he held the legal title to them, which was sufficient for the purpose of the action, and was not inconsistent with an equitable and beneficial interest in another.

*Judgment reversed, and cause remanded for a new trial.*

MR. JUSTICE CLIFFORD dissenting.

Ten bonds, each for the sum of $1,000, were issued by the county for the purpose of erecting a court-house in the county seat of the county; and it appears that the bonds were made payable to bearer, one each succeeding year, till the whole were paid, with interest at the rate of ten per cent per annum. Four of the bonds are the subject of the present controversy, and the defence is the estoppel of a prior judgment in favor of the county in a suit brought to collect certain of the interest warrants annexed to the bonds.

Sufficient appears to show that the bonds were in due form, and that they contain the recital that they " were issued by the county, in accordance with the vote of the legal voters thereof, at a special election holden on the day therein mentioned, pursuant to a proclamation made by the county judge, according to the statute of the State in such case made and provided."

Annexed to the bonds were the coupons for the payment of the annual interest, and the plaintiff in the prior suit, being

the holder of twenty-five of the coupons, instituted the suit to recover the amount, and he alleged in his declaration that he was the holder and owner of the same; that he received the coupons in good faith before their maturity, and that he paid value for the same at the time of the transfer; that the bonds and coupons were issued by the county under and by virtue of a legal and competent authority, and that the same are valid and legal claims against the corporation.

Most of the allegations of the declaration were denied in the answer; but the defendants did not specifically deny that the plaintiff paid value for the coupons at the time he became the holder and owner.

Special findings of the facts were made by the court, from which it appears that the question whether a court-house should be built, and whether a tax sufficient to liquidate the expense should be levied, were duly submitted to the voters of the county; that the propositions were adopted at a special election held for the purpose; that the county judge made the contract for the erection of the court-house; and that he duly executed the ten bonds in question, and delivered the same to the contractor, in pursuance of the contract.

Proof of a satisfactory character was exhibited that the contract between the judge and the contractor was made in the county where the judge resided: but the court found that the bonds were signed, sealed, and delivered by the judge during his temporary absence in another county; and the findings show that the plaintiff became the owner and holder of the coupons before maturity and after the proceedings were correctly entered in the minute-book; nor is it found that the plaintiff had any notice whatever of the supposed irregularities.

Evidence of fraud in the inception of the contract is entirely wanting, except what may be inferred from the unexplained fact that the contractor gave one of the bonds, as a gratuity, to the county judge as soon as he delivered the same to the contractor. Beyond all doubt, the contractor proved to be unworthy, as he never performed his contract, or paid back the consideration.

Judgment was rendered for the defendants in the court below; and the majority of this court affirmed the judgment,

holding that the evidence showed that the bonds were fraudu-
lent in their inception, and that the plaintiff could not recover,
inasmuch as he did not prove affirmatively that he paid value
for the bonds.

Authorities are not necessary to show that the transferee of
a negotiable instrument made payable to bearer, subsequent to
its date, holds it clothed with the presumption that it was
negotiated to him at the time of its execution, in the usual
course of business and for value, and without notice of any
equities between the prior parties to the instrument. *Goodman*
v. *Harvey*, 4 A. & E. 870; *Goodman* v. *Simonds*, 20 How.
365; *Noxon* v. *De Wolf*, 10 Gray, 346; *Ranger* v. *Cary*, 1 Met.
373.

Coupons are written contracts for the payment of a definite
sum of money on a given day, and, being drawn and executed
in a given mode, for the very purpose that they may be sepa-
rated from the bonds, it is held that they are negotiable, and
that a suit may be maintained on them without the neces-
sity of producing the bonds to which they were attached.
*Knox County* v. *Aspinwall*, 21 How. 544; *White* v. *Railroad*,
21 id. 575; *Aurora* v. *West*, 7 Wall. 105; *Murray* v. *Lardner*,
2 id. 121.

Possession of the instrument is plenary evidence of title until
other evidence is produced to control it, the holder being enti-
tled to the same privileges and immunities as an indorsee of a
bill of exchange or promissory note payable to bearer or indorsed
in blank. He is not subject to any equities as between the
promisor and original payee, nor to the set-off of any debt,
legal or equitable, which the latter may owe to the former.
*Pettee* v. *Prout*, 3 Gray, 503.

Title and possession are one and inseparable to clothe the
instrument with the *prima facie* presumption that it was
indorsed at the date of its execution, and that the holder paid
value for it, and received it in good faith in the usual course of
business, without notice of any prior equities. Evidence to
show that he paid value for the instrument is unnecessary in
the opening of his case; but the defendant may, if he can, give
evidence that the consideration was illegal, that the instrument
was fraudulent in its inception, or that it had been lost or stolen

before it was negotiated to the plaintiff; and, if the defendant proves such a defence, it will follow that it must prevail, unless the plaintiff proves that he gave value for the instrument in the usual course of business, in which event he is still entitled to recover. *Fitch* v. *Jones*, 5 El. & Bl. 238; *Smith* v. *Braine*, 16 Q. B. 243; *Hall* v. *Featherstone*, 3 Hurls. & Nor. 287.

Applying that rule to the case as it was first presented, it would seem that the plaintiff should have prevailed, as it is clear that the defendant did not give any sufficient evidence to show that the consideration of the instruments was illegal, or that they were fraudulent in their inception, or that they had been lost or stolen before the plaintiff became the holder of the same, without notice of any prior equities.

Suffice it to remark, in this connection, that these views were urged against the former judgment; but they did not prevail, and the judgment was rendered for the defendant, which is unreversed and in full force. Suit is now brought upon the bonds to which those coupons were attached, and the sole question of any importance is whether the judgment in the former case is a bar to the present suit.

Nothing can be more certain in legal decision than the proposition that the title to the bonds and coupons are the same, as the coupons were annexed to the bonds when the bonds were executed and delivered to the original holder, in pursuance of the contract for building the court-house; and it is equally certain, that if it could be proved in defence that the consideration was illegal, or that the instruments were fraudulent in their inception, or that they had been lost or stolen before they were negotiated to the holder, the defence would apply to the bonds as well as the coupons.

Before proceeding to examine the legal question, it should be remarked that the former suit was prosecuted in the name of a different plaintiff; but the theory of the present defendants is that the present plaintiff was the real owner of the coupons in that action, and that the action was prosecuted for his sole use and benefit. Testimony to prove that theory was offered in the court below, and the majority of the court now hold that evidence to prove that proposition was properly admitted. Assume that to be so, and it follows that the parties, in legal

contemplation, are the same; nor can it be denied that the cause of action, within the meaning of that requirement, as expounded and defined by decided cases of the highest authority, is the same as that in the former action, the rule being that the legal effect of the former judgment as a bar is not impaired, because the subject-matter of the second suit is different, provided the second suit involves the same title and depends upon the same question. *Outram* v. *Morewood*, 3 East, 346.

Holders of negotiable securities, as well as every other plaintiff litigant, are entitled to a full trial upon the merits of the cause of action; but if in such a trial judgment be rendered for the defendant, whether it be upon the verdict of a jury or upon a demurrer to a sufficient declaration, or to a material pleading involving the whole merits, the plaintiff can never after maintain against the same defendant or his privies any similar or concurrent action for the same cause, upon the same grounds as those disclosed in the first declaration, for the reason that the judgment, under such circumstances, determines the merits of the controversy, and a final judgment deciding the right must put an end to the dispute, else the litigation would be endless. *Rex* v. *Kingston*, 20 State Trials, 588; *Kitchen* v. *Campbell*, 2 W. Bl. 831; *Clearwater* v. *Meredith*, 1 Wall. 43; *Ricardo* v. *Garcias*, 12 Cl. & Fin. 400.

Allegations of an essential character may be omitted in the first declaration and be supplied in the second, in which event the judgment on demurrer in the first suit is not a bar to the second, for the reason that the merits of the cause as disclosed in the second declaration were not heard and decided in the first action. *Gilman* v. *Rives*, 10 Pet. 298; *Richardson* v. *Barton*, 24 How. 188; *Aurora City* v. *West*, 7 Wall. 90.

Where the parties and the cause of action are the same, the *prima facie* presumption is that the questions presented for decision were the same, unless it appears that the merits of the controversy were not involved in the issue, the rule in such a case being that where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and that the whole defence might have been presented in that trial, the matter must be considered as having passed *in rem judicatam*, and the former judg-

ment in such a case is conclusive between the parties. *Outram* v. *Morewood*, 3 East, 358; *Greathead* v. *Broomley*, 7 Term, 452.

Except in special cases, the plea of *res judicata* applies not only to points upon which the court was actually required to form an opinion and pronounce judgment, but to every point which properly belonged to the subject of the issue, and which the parties, exercising reasonable diligence, might have brought forward at the time. 2 Taylor, Evid. sect. 1513.

Other text-writers of high authority substantially concur in that view; as, for example, Mr. Greenleaf says that " the rule should apply only to that which was directly in issue, and not to every thing which was incidentally brought into controversy during the trial; " and the reason given for that limitation is worthy of notice, which is, that the evidence must correspond with the allegations, and be confined to the point in issue; and he remarks that it is only to the material allegations of one party that the other can be called to answer, for to such alone can testimony be regularly adduced, and upon such an issue only is judgment to be rendered. Pursuant to those suggestions, he states his conclusion as follows: " A record, therefore, is not held conclusive as to the truth of any allegations which were not material nor traversable, but as to things material and traversable it is conclusive and final."

Unless the court, in rendering the former judgment, was called upon to determine the merits, the judgment is never a complete bar; and it is safe to add, that, if the trial went off on a technical defect, or because the debt was not yet due, or because the court had not jurisdiction, or because of a temporary disability of the plaintiff or the like, the judgment will be no bar to a future action. 1 Greenl. Evid. sect. 330.

Since the resolution in *Ferrer's Case*, 6 Coke, 7, the general principle has always been conceded, that, when one is barred in any action, real or personal, by judgment or demurrer, confession or verdict, he is barred as to that or a similar action of the like nature for the same thing for ever. Demurrer for want of equity in such a case is allowed in chancery, because the whole matter in controversy is open in the first suit.

Contrary to that rule, a party brought a second bill of com-

plaint, and the Vice-Chancellor, in disposing of the case, expressed himself as follows: —

"Where a given matter becomes the subject of litigation in and of adjudication by a court of competent jurisdiction, the court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because the party has, from negligence, omitted part of his case."

And he added that the plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time. *Henderson* v. *Henderson*, 3 Hare, Ch. 115; *Bagot* v. *Williams*, 3 B. & C. 241; *Roberts* v. *Heine*, 27 Ala. 678; *Safford* v. *Clark*, 2 Bing. 382; *Miller* v. *Covert*, 1 Wend. 487.

When a fact has been once determined in the course of a judicial proceeding, say the Supreme Court of Massachusetts, and final judgment has been rendered in accordance therewith, it cannot be again litigated between the same parties without virtually impeaching the correctness of the former decision, which, from motives of public policy, the law does not permit to be done; and they proceed to say that the estoppel is not confined to the judgment, but extends to all facts involved in it, as necessary steps, or the groundwork upon which it must have been founded. *Burlen* v. *Shannon*, 99 Mass. 203; *Queen* v. *Hartington*, 4 El. & Bl. 794; *Gilbert* v. *Thompson*, 9 Cush. 349.

Extended explanations upon the subject of estoppel by a prior judgment were made by this court nearly twenty years ago, by a judge very competent to perform that duty. *Steam Packet Company* v. *Sickles*, 24 How. 342. Such a judgment, he said, in order that it may operate as an estoppel, must have been made by a court of competent jurisdiction upon the same subject-matter between the same parties for the same purpose. He then proceeded to describe the cause of action in that case,

which, as he stated, was a sum of money, being a part of the
consideration or price for the use of a valuable machine for
which the plaintiffs had a patent; that the sum demanded was
the complement of a whole, of which the sum demanded in the
declaration in the former suit is the other part.   Both declara-
tions contained similar special counts ; and the court remarked,
that a decision in the one suit on those counts in favor of
the plaintiffs necessarily included and virtually determined
the sufficiency of the declaration to sustain the title of the
plaintiffs, and showed that the record was admissible in evi-
dence.

Different views were entertained by the defendants, and they
submitted the proposition that a judgment was not admissible
in evidence as an estoppel, unless the record showed that the
very point it is sought to estop was distinctly presented by an
issue, and that it was expressly found by the jury; but the
court remarked, that such a rule would be impracticable, as it
would restrict the operation of *res judicata* within too narrow
bounds, and the court decided that it was not necessary as be-
tween parties and privies that the record should show that
matter of the estoppel was directly in issue, " but only that the
said matter in controversy might have been litigated, and that
extrinsic evidence would be admitted to prove that the particu-
lar question was material and was in fact contested, and that it
was referred to the decision of the jury."

Attempt was made in that case to maintain the proposition
that the judgment in the first suit could not be held to be an
estoppel, unless it was shown by the record that the very point
in controversy was distinctly presented by an issue, and that it
was explicitly found by the jury ; but the court held otherwise,
and expressly overruled the proposition, although the defence
of estoppel failed for other reasons.

Two notes, in another case, were given by the purchaser of a
vessel to the vendor of the same, and payment of the first note
being refused, the payee sued the maker; and the maker, at
the trial, set up as a defence that the vessel was rotten and un-
seaworthy at the time of sale, and that those facts were known
to the plaintiff.   They went to trial, and the verdict and judg
ment were for the defendant.   Subsequently the plaintiff sued

the other note, and the defendant set up the judgment in the other case as a bar to the suit; and the Supreme Court of New York sustained the defence, holding that the former judgment, whether pleaded as an estoppel or given in evidence under the general issue, was conclusive that the sale was fraudulent, and that the plaintiff could not recover in the second action. *Gardner* v. *Buckbee*, 3 Cow. 127.

Certain sums of money, in a later case, were paid by a surety on two bonds given by an importer, in which the plaintiff and defendant were sureties. They were jointly liable; but the plaintiff paid the whole amount, and brought suit against the other surety for contribution. Service was made; and the defendant appeared and set up the defence that he had been released, with the consent of the plaintiff, before the payment was made; and the court sustained the defence upon demurrer, and gave judgment for the defendant.

Moneys were also paid by the same surety to discharge the liability under the second bond. Contribution being refused, the plaintiff brought a second suit, and the defendant set up the former judgment as a bar; and the court sustained the defence, it appearing that both bonds were given at the same time upon the same consideration, and as part of one and the same transaction. *Bouchard* v. *Dias*, 3 Den. 243.

Neither of the second suits in the two preceding cases were for the same cause of action as the first, but the defence was sustained as in *Outram* v. *Morewood*, 3 East, 358, because the suit was founded upon the same title.

Cases of that kind are quite numerous, and they show to a demonstration that a judgment may be a bar if the same title is involved, even though the cause of action may be founded on a different instrument, or for a different trespass upon the same premises.

Conclusive support to that proposition is found in repeated decisions, of which the following are striking examples: *Burt* v. *Sternburgh*, 4 Cow. 563; *Whittaker* v. *Jackson*, 2 Hurlst. & Colt. 931; *Strutt* v. *Bovingdon*, 5 Esp. 59.

In order to make a judgment conclusive, it is not necessary, said Mr. Justice Bigelow, that the cause of action should be the same in the first suit as that in which the judgment is pleaded

or given in evidence, but it is essential that the issue should be the same. The judgment is then coextensive with the issue on which it is founded, and is conclusive only so far as the same fact or title is again in dispute. *Merriam* v. *Whittemore*, 5 Gray, 317.

Decided cases in that State to the same effect are numerous, the highest court of the State holding that it is well settled that a judgment in a former suit between the same parties is a bar to a subsequent action only when the point or question in issue is the same in both; that the judgment is conclusive in relation to all matters in the suit which were put in issue, but has no effect upon questions not involved in the issue, and which were neither open to inquiry nor the subjects of litigation. *Norton* v. *Huxley*, 13 id. 290.

Damages were claimed by the plaintiff for the loss of his shop by fire communicated to it by the defendants' locomotive engine, and he recovered judgment for the injury. He subsequently brought a second suit, for the loss of his dwelling-house and shed by fire, it appearing that the house and shed took fire from the shop. Process being served, the defendants appeared and set up the former judgment as a bar. The court sustained the defence, holding that the plaintiff did not show any right to maintain another action merely by proving his omission to produce upon the trial all the evidence which was admissible in his behalf, and that having chosen to submit his case upon the evidence introduced, he was bound to abide by the verdict and judgment in the first suit. *Trask* v. *Railroad*, 2 Allen, 332.

Where a party took a bill of sale of property from the owner, and the same was subsequently attached by an officer at the suit of the creditors of the former owner, and the purchaser under the bill of sale having converted part of the property to his own use was sued by the officer, and the latter recovered judgment upon the ground that the bill of sale was fraudulent and void as to the creditors, it was held that the judgment was a bar to a subsequent suit of replevin commenced by the grantee in the bill of sale for the residue of the property in the hands of the officer. *Doty* v. *Brown*, 4 Comst. 75.

Beyond question, the bar is not defeated because the subject-

matter of the second suit is different from the first, if it be founded on the same title ; and the Supreme Court of Pennsylvania have held, in accordance with that view, that a judgment in trespass upon a traverse of *liberum tenementum* estops the party against whom it has been rendered, and his privies, from afterward controverting the title to the same freehold in a subsequent action of trespass. *Stevens* v. *Hughes*, 31 Penn. St. 385 ; *Hatch* v. *Garza*, 22 Tex. 187 ; *Clark* v. *Sammons*, 12 Iowa, 370.

Tested by these several considerations, it is clear that a former judgment is a bar in all cases where the matters put in issue in the first suit were the same as the matters in issue in the second suit. *Ricardo* v. *Garcias*, 12 Cl. & Fin. 401 ; *Beloit* v. *Morgan*, 7 Wall. 623. "It results from these authorities that an adjudication by a competent tribunal is conclusive, not only in the proceeding in which it is pronounced, but in every other where the right or title is the same, although the cause of action may be different." 2 Smith, Lead. Cas. (7th Am. ed.) 788, 789 ; Bigelow on Estoppel (2d ed.), 45 ; *Aurora City* v. *West*, 7 Wall. 96 ; *Outram* v. *Morewood*, 3 East, 346 ; *Gould* v. *Railroad Company*, 91 U. S. 526.

Grant that, and still it is suggested that the plaintiff in the suit on the coupons did not introduce evidence to prove that he paid value for the bonds with the coupons ; but the answer to that is, that he might have done so. He alleged in the declaration that he paid value, and consequently he might have given evidence to prove it, which shows that the question was directly involved in the issue between the parties.

Doubtless the plaintiff neglected to give evidence in that behalf, for the reason that he and his counsel were of the opinion that the evidence introduced by the defendants was not sufficient to repel the *prima facie* presumption, arising from his possession of the instruments, that he paid value for the transfer, and I am still of that opinion ; but the remedy of the plaintiff, if surprised, was to except to the ruling, or to submit a motion for new trial.

Suggestions of that sort are now too late, nor are they sufficient to modify the effect of the judgment. When once finally rendered, the judgment must be considered conclusive, else liti-

gation will be endless. Litigants sometimes prefer not to bring
forward their whole case or defence, in order to enjoy the oppor-
tunity to bring up a reserve in case of defeat in the first con-
test; but a rule which would sanction that practice would be
against public policy, as it would enable a party to protract the
litigation as long as he could find means or credit to compel the
attendance of witnesses and to secure the services of counsel.