GUGGENHEIM et al. v. KIRCHHOFER et al.

(Circuit Court of Appeals, Second Circuit. February 11, 1895.)

1. PATENTS—LICENSE—INTERPRETATION—RATE OF ROYALTY.

G. & Sons entered into a contract with K. & Co. by which G. & Sons licensed K. & Co. to use a certain patented method of doing up embroideries, in consideration of an annual payment of $1,500. G. & Sons were to furnish, each year, 75,000 license stamps, one of which was to be affixed by K. & Co. to every piece of embroidery done up in the patented method, such stamps to be paid for at the rate of 2 cents each by the payment of $1,500, previously stipulated. Any stamps required by K. & Co. for pieces of embroidery in excess of 75,000 were to be furnished by G. & Sons at the same rate of 2 cents each. By a separate clause of the contract, G. & Sons agreed not to license any other party under said patent at a less rate of royalty than that paid by K. & Co., and, if they should do so, that K. & Co. should be entitled to a like reduction from the date of any such reduction to a third party, and that, from the date of G. & Sons' acceptance of a lower rate from any third party, K. & Co. should only be obligated to the payment of such lower royalty. Subsequent to the making of this contract, but during the same year, G. & Sons made a contract with another party, licensing him to use the patent at the rate of 2 cents per stamp, but providing that any stamps required in excess of 12,500 should be furnished by G. & Sons free of charge. K. & Co. made the payments stipulated in their contract for the first three years. *Held,* that it was the purpose of the contract between G. & Sons and K. & Co. to require K. & Co. to take 75,000 stamps annually, but to put them upon an equality, as to license fees, with any other licensee from the date of his license; that the subsequent contract permitting another licensee to obtain stamps for less than 2 cents each was an acceptance of a lower rate of royalty; and that K. & Co. were entitled to recover from G. & Sons the payments for all stamps in excess of 12,500 on hand when the second contract was made, together with the payments for stamps in excess of that number in subsequent years, whether the second licensee had ever availed himself of the privilege accorded by his contract or not.

2. PRACTICE—GENERAL EXCEPTION.

An assignment of error based upon a general exception to the ruling of the court in not permitting the cause to go to the jury upon the questions of fact involved, without specifying any particular question of fact to be submitted, is not valid.

3. SAME—REFUSAL TO PERMIT WITHDRAWAL OF COUNTERCLAIM.

Where a counterclaim sets up matter entirely distinct from the plaintiff's cause of action, and no evidence is offered in respect to such counterclaim, and a verdict is directed which does not purport to and could not conclude the defendant in a future action on such counterclaim, the defendant is not prejudiced by a refusal of the court to permit him to withdraw such counterclaim.

In Error to the Circuit Court of the United States for the Southern District of New York.

This was an action by Paul Kirchhofer, Ferdinand Kirchhofer, Bernard Huber, and Max Hoffman, copartners as Ulrich de Gasp Von Willer, against Meyer Guggenheim, Isaac Guggenheim, Daniel Guggenheim, Morris Guggenheim, and Solomon Guggenheim, copartners as M. Guggenheim's Sons. There was a judgment in the circuit court for the plaintiffs. Defendants bring error.

John R. Bennett, for plaintiffs in error.

Thos. P. Wickes and Chas. H. Deuell, for defendants in error.

Before WALLACE and LACOMBE, Circuit Judges.

WALLACE, Circuit Judge. The plaintiffs in error were defendants in the court below, and bring this writ of error to review a judgment for the plaintiffs, entered upon the verdict of a jury, by the direction of the court.

The action was brought by the plaintiffs to recover back the amount of certain royalties paid by the plaintiffs to the defendants during the years 1889, 1890, and 1891, under a contract of the date of May 16, 1889. On that date the defendants made a contract with the plaintiffs, whereby they licensed the plaintiffs for a term of years to use certain embroidery stamps. The contract contained the following conditions:

"First. In consideration of the parties of the second part paying the sum of fifteen hundred dollars per year to the parties of the first part, said parties of the first part do hereby grant unto the said parties of the second part a license under the said Rice patent No. 266,525, thereby permitting them to do up embroideries in the style known as 'Automatic,' and mark them with the name 'Automatic'; said sum to be payable to the parties of the first part on the first day of May in each year hereafter for that year, payable for the present year beginning on the date of these presents, to be made on or before the 15th of June. And the said parties of the first part hereby agree to furnish the said parties of the second part with 75,000 license stamps during each year hereafter, so long as this license shall remain in force, dating from this date, at the rate of two cents per stamp, accepting in payment therefor the said sum of fifteen hundred dollars per annum, one of which stamps said parties of the second part are to place upon each and every piece of embroideries done up by them, and by them brought into or sold, or both, in the United States of America; said 75,000 license stamps to be used by the said parties of the second part within the year for which they are issued, and not to be by them sold or otherwise disposed of to others, being intended for use solely upon embroideries done up by the said parties of the second part. Should the said parties of the second part do up in any one year more than 75,000 pieces of embroidery in the style known as 'Automatic,' thereby requiring more than 75,000 stamps per year, the parties of the first part are to furnish such additional stamps to the said parties of the second part at the rate of two cents per stamp, which shall be paid for by the said parties of the second part to the said parties of the first part at the time of the delivery of such additional stamps. The license stamps are to be furnished by the said parties of the first part, as and in such numbers as they may be demanded by the said parties of the second part, upon their giving for each lot after the first lot forty-five days' notice of the number of stamps required. Second. The parties of the second part covenant and agree, for and in consideration of the parties of the first part granting them a license under the said Rice patent, and agreeing to protect and defend them in the use of the invention specified in said Rice patent, to pay unto the said parties of the first part the said sum of fifteen hundred dollars on or before the 15th day of June, 1889, and the further sum of fifteen hundred dollars on the first day of May in each and every year hereafter, so long as this license shall continue in force, and agree to receive in exchange and full payment therefor the license heretofore granted, and 75,000 license stamps, one of which stamps they will place upon each and every piece of Automatic embroidery done up by them, and brought into or sold or delivered in the United States of America; and they further agree that, in case they shall do up more than 75,000 pieces of such embroideries in any one year, they will obtain an additional number of license stamps from the said parties of the first part, paying therefor to the said parties of the first part, at the time of the delivery of the stamps, the sum of two cents per stamp, so as to have a sufficient number of such stamps to place one upon each and every piece of such embroideries that they may do up, and this the covenant and agree to do. * * * Fifth. The parties of the first part covenant and agree not to hereafter license any other party or parties under the said Rice patent to do up embroideries under or in accordance therewith at a less rate

of royalty than that herein specified; and that should they so license any other party or parties under the said Rice patent to do up embroideries in the Automatic style, or in any other manner, at a less rate of royalty than two cents per stamp, one stamp to be placed upon each piece of embroidery, the parties of the second part shall be entitled to a like reduction from the date of any such reduction. And the parties of the first part further covenant and agree that, if they shall hereafter accept from any party or parties a less rate of royalty than two cents per stamp for each piece of embroidery, the parties of the second part shall be obligated only to the payment of an equally low royalty."

It appeared upon the trial that December 17, 1889, the defendants made a second license contract, by which they licensed third parties for a term of years to use stamps at the rate of two cents per stamp; but the contract further provided that, if the licensees should require for use more than 12,500 stamps in any one year, the defendants would furnish them the additional number free of charge. It was shown that under their contract the plaintiffs had paid the defendants $1,500 during each of the years 1889, 1890, and 1891, and that during the same time the defendants had been supplying the licensors under the second contract with stamps free of charge for the number used by them beyond 12,500 in each year. It also appeared that during the three years the sum paid by plaintiffs for stamps used by them in excess of 75,000 per year amounted, at the royalty rate, to $680. At the close of the evidence, the trial judge directed a verdict for the plaintiffs for the sum of $4,446.40. The defendants excepted to this direction, and have assigned error of the ruling.

The defendants did not ask to have any specific questions of fact submitted to the jury, and there is no error of which they can now be heard to complain unless the trial judge erred in placing a construction on the contract contrary to that upon which they insisted at the trial. They insisted that, under a proper construction of the contract, the plaintiffs were bound to pay the defendants $1,500 annually, and the only royalty as to which the plaintiffs were entitled to a reduction, if others were licensed at a lower rate, was in respect to payments for stamps in excess of that sum. We think the contract does not bear the construction thus contended for. Notwithstanding its tautologies and ambiguities, the intention of the parties in two particulars is clearly manifested. One of these was to require the plaintiffs to take a specific number of stamps annually, and pay for them whether they used them or not. Another was to place the plaintiffs in a position of entire equality, as to royalties or license fees, with all other licensees of the defendants. The provisions intended to prevent discrimination in the royalties are found exclusively in three covenants, contained in the fifth clause of the contract, and little, if any, light upon the interpretation of these covenants can be derived from any language used in the other clauses of the contract. By the first of these covenants, the defendants agree not to license any other persons than the plaintiffs at a less rate of royalty. By the second, they agree that, should they license others at a less rate of royalty than two cents per stamp, the plaintiffs are to have a like reduction from the date of any such reduction. By the third covenant, they

agree that, if they shall accept from any other licensee a less rate of royalty than two cents per stamp, the plaintiffs shall be obligated only to the payment of an equally low royalty. Read together, these covenants permit but one conclusion, and that is that the defendants are not, during the life of the contract, to license any others at a less rate than two cents per stamp, and, if and when they do, the plaintiffs are to have the benefit of that rate. The obligation of the plaintiffs found in the second clause of the contract, to take and pay for 75,000 stamps each year, is independent of these covenants, and is not qualified or affected by them. It follows that, while the licensors were at liberty to make their own terms with other licensees as to the number of stamps to be taken and paid for annually, they were not at liberty to make better terms as to the rate of royalty. When they entered into a binding contract with another licensee enabling him to obtain stamps for less than two cents each, they accepted a lower rate of royalty, within the meaning of the third covenant. Having licensed another by a contract to supply him without charge for all stamps in excess of 12,500 annually, they were bound to accord similar terms to the plaintiffs, and to supply them, during each year of the license, with all stamps in excess of that number without charge. Were it not for the second covenant, it might be doubtful whether the plaintiffs did not become entitled, when the second license was granted, to be repaid for all the stamps in excess of 12,500 which had been supplied to them during the year 1889. But that covenant provides that they are to be entitled to the reduction given another licensee "from the date of any such reduction." It is to be construed so as to effectuate the intention of the contract not to subject the plaintiffs to the competition of other licensees at a lower rate. It means that, from the date of a license giving a lower rate of royalty to another licensee, the plaintiffs shall be entitled to a similar rebate; but the rebate is not to apply to stamps which have been used by the plaintiffs, and as to which they have completely enjoyed the privilege of the patent. As to all stamps previously used, competition could not hurt. We, therefore, conclude that the plaintiffs were entitled to recover the payments for all stamps on hand December 17, 1889, in excess of 12,500, together with the payments for stamps supplied them in excess of that number in each of the following years.

It was not shown upon the trial how many stamps the plaintiffs had on hand or unused when the second contract was made. It had been shown by the testimony for the plaintiffs that their orders from customers for embroideries received after the middle of May in each year were, in the usual course of business, filled in the following months of November, December, and January, but there was no evidence to show what proportion of the orders for 1889 had been filled prior to December 17th. So far as appeared, they may not have had 12,500 on hand. Upon this state of the evidence, if the defendants had so requested, they would have been entitled to an instruction that plaintiffs' recovery be limited to payments for stamps subsequently supplied. The trial judge, in directing a

verdict, seems to have assumed that the plaintiffs had on hand five-twelfths of the 75,000, and allowed a recovery for that year on that basis. But the defendants did not impugn the correctness of this assumption, or ask to go to the jury upon the question of fact involved in it. They excepted generally "to the ruling of the court in not permitting the cause to go to the jury upon the questions of fact involved," without specifying any particular question of fact which they desired submitted to the jury. An assignment of error based upon such an exception is not valid.

Error is assigned of the ruling of the court in admitting the testimony of the witness Wolf in respect to matters of which it is insisted he had no personal knowledge. It suffices to say as to this exception that the evidence received was of no importance, and its reception was harmless. It was unnecessary for the plaintiffs to show how many stamps the second licensees had actually used. They were entitled to recover the rebate, irrespective of the fact whether the other licensees had ever availed themselves of their contract. The defendants accepted a lower rate of royalty when they made the second license contract, and, if the second licensees had never used a stamp under their license, the plaintiffs would, nevertheless, have been entitled to the reduced rate.

Error is also assigned of the refusal of the trial judge to permit the defendants to withdraw the counterclaim alleged in their answer. The counterclaim set up matters entirely distinct and independent from the cause of action of the plaintiffs, and which in no respect involved an inquiry into the merits thereof. It alleged that the plaintiffs had conspired with various licensees of the defendants to dispute the title of the defendants to the invention of the patent, and use the invention in violation thereof, and sought to recoup damages sustained thereby against the claim of the plaintiffs. As no evidence was offered in respect to the matters thus alleged, and as the verdict directed did not purport to, and could not by any implication, conclude the defendants in any future action from litigating these matters, the defendants were not prejudiced by the refusal. Cromwell v. County of Sac, 94 U. S. 351; Ressequie v. Byers, 52 Wis. 650, 9 N. W. 779; Bascom v. Manning, 52 N. H. 132; Sweet v. Tuttle, 14 N. Y. 465; White v. Chase, 128 Mass. 158.

We find no grounds for a reversal of the judgment, and it is therefore affirmed.