## EVANS v. ELY.

Circuit Court of Appeals, Third Circuit.
February 20, 1929.

No. 3919.

Pepper, Bodine, Stokes & Schoch and Isaac A. Pennypacker, all of Philadelphia, Pa., for appellant.

Guckes, Shrader, Burtt & Thornton, and J. Rech Guckes, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. There were two suits in assumpsit between the same parties, arising out of the same transaction, tried in the same court on substantially the same evidence but on different causes of action. In the latter action, the one here on appeal, the trial court directed a verdict for the defendant on holding that the judgment in the former action—in which it found the same matters here involved had been determined —operates as an estoppel of the instant suit and on a finding that, apart from the doctrine of estoppel, the evidence does not sustain the contract or contracts declared on. The plaintiff appealed.

For a statement of the transaction on which both cases were grounded reference

is made to the opinion of this court in Evans v. Ely (C. C. A.) 13 F.(2d) 62; and for a statement of the applicable law of res judicata or estoppel by judgment it will be enough to cite Cromwell v. County of Sac, 94 U. S. 351, 353, 354, 24 L. Ed. 195 and Southern Pacific Railroad Co. v. United States, 168 U. S. 1, 48, 18 S. Ct. 18, 27 (42 L. Ed. 355), and quote these pronouncements upon the doctrine:

"* * * It should be borne in mind, * * * that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * *

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

"The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

The essence of estoppel by judgment being that there has been a judicial determination of a fact, the question pertinent in this case, as in all cases raising the doctrine, is, has there been such a determination here?

Speaking of the parties as they stood in the trial court, the plaintiff in the first suit declared on an oral agreement, averring that thereby he engaged to sell certain shares of stock and the defendant agreed to buy them, not for himself but for the traction company of which he was president, and that the defendant refused to take and pay for the shares, admitting that he had no authority from the company to make such a contract, and sought to recover for the damages he had sustained by the breach of this oral agreement on the liability of the defendant arising out of an implied warranty of his authority to make the oral contract on behalf of his company, binding him as though he had made it on his own behalf. On that issue manifestly the court had to look for and find evidence that the parties made such an oral agreement before it could allow the jury to hold the defendant on an implied warranty of authority to make the agreement. The trial court, and then this court on appeal, viewed everything that had transpired before the plaintiff signed a written contract of sale (not there in evidence but which it was admitted the defendant did not sign) as negotiations leading up to the proposed written contract and held that the facts, conceded or definitely proved, did not establish an antecedent oral contract between the parties and disposed of the case accordingly. That is what the court judicially determined in the first suit.

The plaintiff then brought this suit, averring in his statement of claim (and proving at the trial) substantially the same facts in respect to the sale of the same stock as he averred in the first suit but setting up an oral contract of sale different from the one pleaded in the first suit in that he charged that the defendant's undertaking was individual or personal, not representative of or on behalf of the traction company, and that this oral contract was fully completed before the plaintiff alone signed the written memorandum and that it was accompanied by another agreement or promise which the absent defendant made through his agent Wilson to sign a writing embodying the oral agreement on the next day, a copy of the writing (signed by the plaintiff but not signed by the defendant) being appended and appearing for the first time in either case. The plaintiff then averred that the defendant breached this oral agreement by refusing to take and pay for the shares and also breached his promise to sign the written memorandum of purchase. Thus, instead of the action being on the defendant's implied warranty of authority to contract for another as in the first case, the cause of action in this the second case is based on an oral contract binding the defendant to purchase for himself and also on his promise to enter into a written contract to that effect. The difference in the causes of action in the two suits, the plaintiff explains, grows out of

a difference in the stages of the negotiations, of which he says there were two; the first stage, reached just before dinner when the parties separated to allow time for drafting the contract and at which the plaintiff declares the oral contract for the sale of the stock (first sued upon) had been concluded upon the supposition that the real purchaser was the traction company; the second stage, begun when the parties reassembled with the written memorandum before them naming the defendant as buyer (it having been understood all along that a contract in the name of the defendant was the best way of avoiding complications with the Public Service Commission of Maryland) and containing provisions which the plaintiff claims were not in the original completed oral agreement. After discussion the plaintiff signed the written memorandum; the defendant did not sign it.

The plaintiff clarifies the cause of action thus pleaded in this suit by stating in his brief the precise cause of action which he says is on an oral agreement reached by him and the defendant, who was acting through an agent, at the second stage. This he avers was an oral engagement by the defendant to purchase the stock individually, not on behalf of the traction company. He sues for its breach "or in the alternative for the breach of the defendant's promise to sign memorandum on the following day."

So from the pleadings in the two suits it appears that the defendant entered into three entirely completed oral contracts with the plaintiff for the purchase of stock. One (at the first stage) when the defendant was acting for the traction company; another (at the second stage) when the defendant was acting for himself, evidenced by the written memorandum containing the terms of the oral contract reached just prior to the plaintiff's act of signing it; and still another in the form of a promise by the defendant to sign the memorandum. Aside from these claimed fully completed oral agreements the plaintiff maintains that the evidence in this suit would support a verdict in his favor in that the defendant is bound by the terms of the written memorandum although not signed by him.

Keeping in mind the precise matter decided in the first suit we return to the plaintiff's two specific causes of action in this suit—an oral agreement with the defendant individually and his oral promise to sign a written agreement. We first dispose of the last cause of action by stating that the evidence shows that the promise was made by one whose presence and participation in the transaction was only due to the fact that he was vice-president of and acting for the traction company and that the evidence would not support a finding that he was the agent of the defendant with authority to bind him by his promises. As to the claimed difference in oral contracts growing out of the one transaction and declared on in the two suits, it is manifest that only one contract was contemplated by the parties and only one could have been entered into as a result of the negotiations. Two wholly opposite agreements could not have been validly made. Either would have nullified the other. Yet the alleged oral agreements declared on in the two suits were for the purchase of the same stock by the same defendant though in different rights. But in whatever capacity the defendant was acting, whether representative or individual, and however the cause of action be pleaded, an oral agreement to which he was a party must be found before he can be bound.

The claimed several oral agreements sprang from the same transaction. The transaction consisted of negotiations, the writing of a memorandum of sale and the affixing thereto of the plaintiff's signature alone. We found in the first suit that everything that transpired before the plaintiff signed the paper bore the marks of negotiations. We also found that the record disclosed no antecedent oral contract between the parties. Those findings in the first case constitute a judicial determination of facts which precludes, under the doctrine of estoppel by judgment, a finding of an oral agreement in this case.

Aside from the operation of the doctrine of estoppel by judgment we are constrained to agree with the learned trial judge that the evidence shows that the parties contemplated making a written contract; that all that preceded the signing of the proposed written contract by the plaintiff were mere negotiations out of which emerged no oral contract of sale between the parties. The plaintiff makes the point that such a finding can be made only by a jury and that in consequence the issue whether there was a contract should be submitted. We think the submission of such an issue cannot be justified when, as here, the evidence would not sustain an affirmative finding. 13 F.(2d) 62, 64.

The judgment is affirmed.