## MORAN TOWING & TRANSPORTATION CO. v. SUNSET LIGHTERAGE CORPORATION et al.

### No. 152.

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney and

Richard F. Lenahan, both of New York City, of counsel), for appellant.

Hunt, Hill & Betts, of New York City (George C. Sprague, of New York City, of counsel), for Osaka Shosen Kaisha.

Courtland Palmer, of New York City, for Sunset Lighterage Co.

William F. Purdy, of New York City (John E. Purdy, of New York City, of counsel), for United States Lighterage Co.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The situation out of which this suit arose was as follows: The Moran Towing & Transportation Company are the owners of scows in New York Harbor, which they at times demise to others, and at times tow with their own tugs. The steamer, Orient, was lying on the outside of Pier Thirty-Eight in Buttermilk Channel, laden in part with lumber, of whose owner Simpson, Spence & Young were the agents. They wished to discharge it from the Orient and carry it ashore. The Moran company had often demised their scows through a stevedoring company to the United American Lines. One, Patterson, an employee of the stevedore, called up an officer of the Moran company and agreed to take a scow for the daily hire of fifteen dollars, including the bargee's wages; this is the usual harbor practice. The Moran company, in accordance with Patterson's orders, delivered a scow by one of their tugs alongside the Orient, where she was laden with the lumber of Simpson, Spence & Young's principal, and where she lay for two days until she broke loose. The Moran company supposed that Patterson had acted for the United American Lines, and wrote to confirm the oral charter with it. In this they were mistaken, and later concluded that Simpson, Spence & Young were the charterers; they billed them for the hire and were paid. The evidence leaves it in some doubt, however, whether Simpson, Spence & Young were in fact the charterers, or who were; though Patterson had concededly acted for some principal; the United American Lines, the stevedore, Simpson, Spence & Young, or their principal. The acceptance and lading of the scow was proof that somebody had chartered her; by familiar law such charters are demises.

About two days later, while lying alongside the Orient, the scow broke loose in a severe storm and struck a nearby scow of the respondent, Sunset company, which in turn broke loose, and struck a scow of the respondent, United States Lighterage company, which in her turn broke loose, and struck a ship of the respondent, Osaka Shosen Kaisha. All the vessels so struck were damaged, and two suits resulted. The owners of the ship sued the scow of the United States Lighterage company in rem; that company claimed its scow, answered, and impleaded the scow of the Sunset company in rem; the Sunset company claimed its scow, answered, and impleaded the Moran scow in rem. This was the first suit. The second was a libel in rem by the United States Lighterage Company, against the scow of the Sunset company, which again impleaded the Moran scow in rem. These suits were tried together, and resulted in a decree against the Moran scow alone, which we affirmed without opinion. The Moran No. 52, 45 F.(2d) 1022. The District Judge in those suits found that the Moran company, as well as "those in charge" of the scow, were at fault for failing "to take into account the weather conditions of which public warnings had been given," and to secure the Moran scow from breaking loose.

The petition at bar does not allege that the United States Lighterage Company and Osaka Shosen Kaisha have asserted claims against the petitioners in personam, but the case has been presented as though they have, and we so dispose of the appeal. It adds that the Sunset company has filed a libel, though of what kind it does not say; again, that certain of the cargo owners have "claims," not yet pressed. The three respondents answered, and denied the right to limit; it may be taken that by this they do assert claims in personam, since otherwise they would have no interest in the suit. The judge dismissed the petition, and the Moran company appealed.

It is obviously necessary to determine what is "the liability of the owner * * * for any * * * damage," before we can say whether it was "incurred without the privity, or knowledge of such owner." Section 183, Title 46, U. S. C. (46 USCA § 183). Ordinarily the nature of the petitioner's liability appears in claims filed in the proceedings; here there are none, and we are confined to the petition, eked out by statements in the record. The only possible liabilities of the Moran company are as follows: As demisors, they might be liable because on delivery they knew, or should have known, that the scow was in a condition likely to damage other shipping. In re Cullen Fuel Company (C. C. A. 2) 62 F.(2d) 68,

December 12, 1932. Nothing of the sort is suggested, either in this record, or in that of the suits in rem. Next, the bargee might have failed properly to make fast the scow, or to strengthen her fasts when the storm was on. Assuming that the Moran company would be liable for this, they proved that the bargee was an experienced man, and that none of their officers could have known of any such putative neglect, if it had existed. The real claim appears to be that the Moran company were charged with notice that a storm was coming, that the scow was in an exposed position, and that they owed a duty to surrounding shipping either to remove, or to secure her. We shall assume arguendo, though the evidence does not really warrant it, that their officers had knowledge of this. Even so they owed no duty to any one to intervene. The bargee was indeed their agent for many purposes, but not to forecast storms or determine whether a berth would become foul, if one came from a given quarter. The B. B. No. 21, 54 F.(2d) 532 (C. C. A. 2). Such men are not mariners, and their duties are limited to much humbler tasks, like sounding the bottom, making fast lines, letting go anchors, preventing overloading, and the like. The scow had been bailed, and the only responsibility for her position and movements was the charterer's, who had possession and control of her. The Barnstable, 181 U. S. 464, 468, 469, 21 S. Ct. 684, 45 L. Ed. 954; In re Cullen Fuel Company, supra; Winterbottom v. Wright, 10 M. & W. 109; Herlihy v. Smith, 116 Mass. 265. If she endangered other craft where she lay, the Moran company were not responsible, unless the bargee could have avoided the danger by a change of, or addition to, his lines; and, as we have said, if that was the cause of her breaking loose, they knew nothing of it, nor were they bound to know. True, they had an interest in the scow which might excuse interference if she were in peril. They might rescue her, but they were under no duty to others to do so; if they were willing to take their chances, no one can complain. The charterer alone was charged with any duty to prevent her doing such damage. Thus, on any theory the Moran company may limit their liability; either there was none, or, if there was, they were not in privity with the breach.

◼ The decrees in the suits in rem were not res judicata on this issue. The scow, though on demise, was liable in rem for the charterer's fault. The Barnstable, supra, 181 U. S. 464, 21 S. Ct. 684, 45 L. Ed. 954. The libels asked nothing more, and even if the judge found the owners at fault, it was not an estoppel. The causes of suit being different, the finding, to be conclusive in the suit at bar, must have been necessary to the decrees entered in the first. Cromwell v. County of Sac, 94 U. S. 351, 354, 24 L. Ed. 195; Landon v. Clark, 221 F. 841 (C. C. A. 2); Doyle v. Hamilton Fish Corp., 234 F. 47, 49 (C. C. A. 2).

◼ Finally, it was of not the slightest moment whether the Moran company proved a demise of the scow to Simpson, Spence & Young, as the petition alleged; the only relevant issue was whether she was on demise at all. The identity of the charterer was a false lead, for it appeared beyond any possible peradventure that she had been demised. It is curious that to-day, and especially in the admiralty, such variances should be thought vital.

Decree reversed; petition granted.