AMERICAN DAIRY. ETC., CO., (HOWARD v.)

[See Howard v. American Dairy, Etc., Co., Case No. 6,753.]

---

## Case No. 296.

AMERICAN DIAMOND ROCK BORING CO. v. SHELDON et al.

[17 Blatchf. 208; 4 Ban. & A. 551.][1]

Circuit Court, D. Vermont. Oct. 9, 1879.[2]

PATENTS FOR INVENTIONS — REISSUE TO ASSIGNEE — VALIDITY—DISMISSAL—EFFECT ON SUBSEQUENT SUIT.

1. The re-issued letters patent. No. 3,690, granted to Asahel J. Severance, as assignee of

[1][Reported by Hon. Samuel Blatchford, Circuit Judge: reprinted in 4 Ban. & A. 551; and here republished by permission.]
[2][Reversed on rehearing. American Diamond Rock Boring Co. v. Sheldon, 25 Fed. 768.]

Rodolphe Leschot, October 26th, 1869, for an improved rock drill, are valid.

[See note at end of case.]

2. Where a re-issue is granted to an assignee, it is to be taken that he had title to the patent, unless the contrary is made to appear.

3. A suit which is dismissed for want of prosecution is no bar to a subsequent suit for the same cause of action.

4. The question of the infringement of said re-issue considered.

5. In determining whether a re-issue is for a different invention from the original patent, the two must be compared, to see if the invention patented in the re-issue is in any manner described in any part of the original and whether it might have been patented there.

[In equity. Suit by the American Diamond Rock Boring Company against Charles Sheldon and others to enjoin infringement of letters patent No. 39,235, reissue No. 3,690, and for an accounting. Decree for complainants.

[In course of litigation, complainants subsequently moved for an injunction, and defendants objected, on the ground that the patent had expired. Objection overruled. American Diamond Rock Boring Co. v. Sheldon, Case No. 297. Defendants' motion for a rehearing was denied, and the injunction was restored as to machines made in infringement of patent. Id., 1 Fed. 870. Complainants' motion for attachments for contempt for violation of injunction was denied. American Diamond Rock Boring Co. v. Sutherland Falls Marble Co., 2 Fed. 353. Defendants' motion for a rehearing was granted. Id., 24 Fed. 374. On rehearing, complainants' bill was dismissed. Id., 25 Fed. 768.]

Charles F. Blake, for complainant.

E. J. Phelps and W. G. Veazey, for defendants.

WHEELER, District Judge. This suit is brought for relief against infringement of re-issued letters patent, No. 3,690, to Asahel J. Severance, as assignee of Rodolphe Leschot, October 26th, 1869, for an improved rock drill, and has been heard upon pleadings, proofs, and argument of counsel. The plaintiff shows title from Severance. The defendants claim that Severance had no title, and that, therefore, the plaintiff has acquired none, and is not the owner of the patent; that Leschot was not the first inventor of the invention patented; that the re-issue is for a different invention from that in the original patent and is, therefore, void; that the plaintiff is estopped from maintaining this suit, by a decree of the circuit court of the United States for the district of New Hampshire, dismissing a bill brought by the plaintiff against the Sullivan Machine Co., of whom these defendants bought the machines claimed here to be an infringement of the patent, for an infringement there of this same patent; and that the defendants do not, in fact, infringe.

That the patent was valid, and that it was infringed by a drill then in use by the Sullivan Machine Co., was adjudged in favor of the plaintiff, in a suit in favor of the American Diamond Drill Co., from whom the plaintiff derives title to the patent, against the Sullivan Machine Co., from whom the defendants acquired title to the machines in question, in the circuit court of the United States for the southern district of New York. American Diamond Rock Boring Co. v. Sullivan Mach. Co., [Case No. 298.] That was a suit between privies to these parties, and would seem to settle those questions, as between them. And, if that judgment would not be technically conclusive, the authority of it would be sufficient ground for determining the same questions in the same way here, unless presented upon different facts; and there is nothing before the court here which was not produced there, that should vary the result.

An English patent to Robert Bearl, before Leschot's invention, is presented here, as showing an anticipation, and was not presented there; but, the devices described in that patent are not like Leschot's. It made use of water, but not in the same way, and did not have diamonds, as Leschot's has, nor anything equivalent to them, for the purpose for which they were used. Other things prior have been put in evidence, properly enough for the purpose of showing what was in existence at the time of Leschot's invention, to construe the patent by, but not pleaded, or stipulated about, so as to be properly in the case to be considered upon the question of anticipation of the entire invention. There are, however, none of them, as they have been viewed, which would appear adequate for that purpose, if properly set up in the answers. These matters are, therefore, left to stand as they were placed by that decision.

As the re-issue was granted to Severance, it is to be taken that he had title, unless the contrary is made to appear. The defendants have introduced an abstract of title, which shows that Severance acquired title from one Dow, and shows a contract between him and Leschot, upon which there is some question about whether it carries title or not. But, showing that title does not show that there is no other, and there is a lack of any competent evidence in the case to show that there is not, by some other line of conveyances, a perfect title. If the certificate to the copies could be said to imply that there was no other title of record, it would not be evidence of the fact. Such copies are evidence of what is of record, as the originals would be, but are not evidence of the fact that there are not other records. Rev. St. § 892; 1 Greenl. Ev. § 498. But, even if this was not so, the abstract produced shows that Dow had full title to one-half of the patent which would pass to Severance and to the plaintiff, and, as there has been no objection to any

non-joinder of any other party, that title would be sufficient to maintain this suit, for the protection of that interest, at least.

The defendants set up the decree in the district of New Hampshire, as a bar, legal or equitable. The plaintiff traverses the answer, which makes it necessary for the defendants to make proof of that defence, because it is not responsive to the bill. The proofs do not at all show that the bill there was for the same relief as this one. The making and selling these machines to these defendants may have been long subsequent to the bringing of that bill, and even to the decree. If the bill had been for the same relief, and had been dismissed on its merits, it would have been entirely conclusive as between the parties to it and their privies, as to that cause of action, upon every question which might have been raised concerning it, whether actually made upon pleadings or evidence or arguments of counsel, or considered by the court, or not. But, where a judgment upon a different cause of action is relied upon as settling a question, it must be shown that the question was actually raised and decided. Cromwell v. Sac Co., 94 U. S. 351; Davis v. Brown, Id. 423. The record produced, and that is the only evidence upon this subject, fails to show that any question open here was, in fact, passed upon there. It shows that the bill was dismissed, with costs, but shows no ground upon which it was dismissed, except the want of appearance of the plaintiff; and a dismissal for that cause is not conclusive in favor of the defendant, even upon another suit for the same relief. Mitf. Eq. Pl. 238; Carrington v. Holly, 1 Dickens, 280; Rosse v. Rust, 4 Johns. Ch. 300; Badger v. Badger, [Case No. 717;] Porter v. Vaughn, 26 Vt. 624. That suit appears to have been, in reality, dismissed for want of prosecution, and. in effect, is like a nonsuit in an action at law.

This leaves the question of actual infringement, by the machines now in use by these defendants, to be determined here. This question was expressly left open and undecided by Shipman, J., in American Diamond Rock Boring Co. v. Sullivan Mach. Co., [Case No. 298.] before cited. The drill now in use is precisely like that adjudged to be an infringement in American Diamond Drill Co. v. Sullivan Mach. Co., [21 Fed. 74.] except that, in the latter, the diamonds at the circumference projected beyond it, while in the former the stock is enough larger than in the latter to fill out and be flush with the diamonds at the circumference. The diamonds themselves stand precisely as they did before, and the proof is quite full, especially that on the part of the defendants, that they operate precisely as they did before. It was supposed that, with the stock flush with the outer edges of the diamonds, there would not be room for the detritus to be carried up outside of the stock, even if

the drill would penetrate the rock far enough to make any to be carried up; but it was found, on experiment, that the diamonds, when projecting, always cut a hole larger than the circle they would describe when centred accurately, and enough larger to permit the detritus to pass upward with the spaces between them filled, and that filling the spaces, by bringing the stock out flush with them would not interfere with their operation. The diamonds are the operative things, and the drill, with the stock flush with them at the circumference, has all the elements for cutting that one with the diamonds projecting there has, and operates in precisely the same way. The flush stock is better than the other, in some respects. Making it flush is, probably, an improvement upon the other, but, if so, it is an improvement, made by adding to the other, and not by altering its constituent parts or their mode of operation. As the use of the other without the addition to the thickness of the stock was an infringement, it would seem that the use of this in the same way, with the addition, would be.

Besides this, Leschot's patent was not merely for a drill with the addition of laterally projecting diamonds. It did not purport, on its face, to be for such an invention; neither is it necessary, on account of the prior state of the art, to construe it as being only for that, in order to sustain it at all. The patent was as much for the forward projecting diamonds and their mode of operation, as for any other part. No one before had ever made a drill, either annular or cylindrical, armed with diamonds, and worked by a rotary and direct forward motion communicated to it by power. Still less had any one ever invented such a drill, assisted in its operation by water carried in through a tubular bar and stock. The original patent did not cover the mode of using water, although the specification showed that to be a part of the invention. This made it a very proper case for a re-issue, to cover that part before omitted. It is, probably, true, as argued by counsel for the defendants, that the first re-issue was altogether too broad and could not have stood, which made it proper to have that corrected by another surrender and re-issue, as was done. The second re-issue was proper, as stated by Shipman, J., in the case before cited, and it would not be affected at all by the faults of the first re-issue, but would correct them. In Thomas v. Shoe [Machinery] Manuf'g Co., [Case No. 13,911,] Mr. Justice Clifford said: "Where the commissioner accepts a surrender of an original patent and grants a new patent, his decision in the premises, in a suit for infringement, is final and decisive, and is not re-examinable in such a suit in the circuit court, unless it is apparent upon the face of the patent that he has exceeded his authority, that there is such a repugnancy between the old and the new patent that it

must be held, as matter of legal construction, that the new patent is not for the same invention as that embraced or secured in the original." "Inquiries in such a case are restricted to a comparison of the terms and import of the two patents, in view of the drawings and patent office model. If, from these it results that the invention claimed in the re-issue is not substantially different from the one described, suggested or indicated in the specification or drawings of the original patent or patent office model, the re-issued patent must be held valid, as all other alterations and amendments plainly fall within the intent and purpose of the provision in the act of congress, which allows a surrender and re-issue; or, in other words, if the re-issued patent does not, upon the face of the instrument, embrace anything not substantially described, suggested, or indicated in the specifications, drawings or model of the original, the defense that the re-issued patent is not for the same invention as the original must be overruled." Under this rule, upon this question in this case, there is nothing to do but to compare the re-issue upon which the suit is brought with the original patent, disregarding all else, to see if the new invention patented in this re-issue is the same that is in any manner described in any part of the original; not whether it was patented, or even thought or sought to be, there, but whether it appears, from what is there, that it might have been patented there if it had been thought of and desired. Upon such comparison, there is nothing in the re-issue which is not in the specification of the original distinctly mentioned, although, as argued, it is not all claimed. It is quite clear, upon principle and authority, as well as upon the former adjudication, that this re-issue is valid.

Upon the question of infringement, it appears that the defendants make use of as much of Leschot's invention as he would, in removing as much of the rock as he would remove, by cutting. By his method he would cut an annular hole and leave a core to be removed otherwise. They cut what would be the annular hole by the same means and in the same way. They have added, in the middle of their drill, enough similarly cutting material to cut away the core also, but they none the less cut away the rest by his method. This addition is an improvement, when it is not desirable to save the core, but Leschot's drill is made use of as a basis for the improvement, and the owners of the patent, as also held by Judge Shipman, in the former case, cannot be improved out of their right to it. The case, in this respect, is somewhat like Electric Telegraph Co. v. Brett, 4 Eng. Law & Eq. 347. That patent was for giving signals at distant places by means of electric currents sent through metallic circuits consisting of wires extending to the places and back. The defendants made use of the earth, to complete the circuits, in place of the returning wire, and claimed that this constituted the whole a different machine that was not an infringement. It was held, however, that they made use of so much of the patented invention as was involved in the wire which they did use and its operation, and they were made liable for that infringement.

It is stoutly insisted, in behalf of the defendants, that the invention was of, and the patent for, a mere tool, and not for any machine, combination or arrangement, and that the drill used by the defendants is a very different tool, especially in form and appearance. It is true, that the two do not at first, look alike, but that is not by any means a full or accurate test. The outward form of them is not at all material. Their operation and performances are what are important. In Machine Co. v. Murphy, 97 U. S. 120, Mr. Justice Clifford, in speaking of such a question, again said: "Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being, that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of the things, but are to look at the machines, or their several devices or elements, in the light of what they do, or what office or function they perform, and how they perform it, and to find that one thing is substantially the same as another, if it performs substantially the same function, in substantially the same way, to obtain the same result, always bearing in mind, that devices in a patented machine are different, in the sense of the patent law, when they perform different functions, or in a different way, or produce a substantially different result. Nor is it safe to give much heed to the fact, that the corresponding device in two machines organized to accomplish the same result is different in shape or form, the one from the other, as it is necessary, in every such investigation, to look at the mode of operation or the way the device works, and at the result as well as at the means by which the result is attained. Inquiries of this kind are often attended with difficulty, but, if special attention is given to such portions of a given device as really do the work, so as not to give undue importance to other parts of the same which are only used as a convenient mode of constructing the entire device, the difficulty attending the investigation will be greatly diminished, if not entirely overcome.

Here, the thing invented and the device which the defendants use are parts of machines. The operative things which do the work are the diamonds which abrade the rock, and the water which carries off the detritus. The stock merely holds the diamonds in place upon itself and imparts its

motion to them. In each machine the diamonds work with their forward faces, by having a rotary and progressive forward motion given to them by means of the stock; and, in each, the water does its work by being injected through the stock and flowing out around it. The form of the stock is of no importance, further than to hold the diamonds and admit the flow, in and out, of the water. The flush stocks or heads do both of these precisely as the receding ones do. They, doubtless, hold the diamonds more firmly and better, because the diamonds are imbedded deeper in them, but not because they are held otherwise than by being imbedded in them. They cut more of the hole, but do it by the same means, operating in the same manner. The corresponding parts in each perform no different functions and produce no different results. It is quite plain, upon this comparison, in the light of the rule laid down in the case mentioned, that the defendants do make use of the patented invention, and thereby infringe upon the exclusive rights of the orator.

Let a decree be entered for an injunction and an account, according to the prayer of the bill.

[NOTE. The points decided in this case did not arise and were not discussed in the opinions subsequently rendered in the course of litigation, and reported in American Diamond Rock Boring Co. v. Sheldon, Case No. 297, 1 Fed. 870, 2 Fed. 353, and 24 Fed. 374. On final hearing this case was reversed, Wheeler, district judge, holding that the second, third, and fourth claims of the reissue were not infringed by defendants, and that "the first claim is not for a tool operating substantially as specified, as the claim of the original patent is, and does not therefore take in the operation including the means of operation, as that claim might; but is for the combination of any boring-head having projecting diamond points with merely a tubular boring-bar. It leaves out the injection of water through the boring-bar from the combination, which the claim of the original might cover, and leaves out the limitation of that claim to an annular boring-head, and extends the combination to that extent beyond what the original would cover. This enlargement of the claim, so long after the original, is not valid according to the series of later decisions upon reissued patents, as now understood. The combination is an entirety, not separable from what the original would cover. The statute in force when this patent was first granted, giving patentees the right to maintain an action for infringement of such parts of their inventions as were bona fide their own, as well as that in force when the reissue was granted and now, carefully limited the right to such material and substantial parts of the thing patented as could be definitely distinguished from the parts claimed without right. The part of this claim that might cover the infringement is blended with, and not separable or distinguishable from, the rest. There is no claim in the reissue, or set of claims, that covers the same invention as the original, and no more, and no claim of the reissue that is within the claim of the original and covers the infringement. These considerations lead to the same result that was reached upon the same patent in American Diamond Drill Co. v. Sullivan Mach. Co., 21 Fed. 74. A decree dismissing the bill of complaint necessarily follows." 25 Fed. 768.]

[The original patent involved in this litiga-

tion, No. 39,235, was granted July 14, 1863, to R. Leschot, and was reissued October 26, 1869, No. 3,690. For other cases involving this patent, see American Diamond Drill Co. v. Sullivan Mach. Co., 21 Fed. 74; Steam Stone-Cutter Co. v. Sheldons, 15 Fed. 608.]