THE ILLINOIS TITLE & TRUST COMPANY, *Appellant,* v. P. H. McCOY *et al.* (JAMES S. GRIGGS, *Intervenor, Appellee;* HATTIE ARMSTRONG *et al., Appellants*).

No. 16,941 and No. 17,539.

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE—*Patent Right—Collateral Security—Consideration.* On motion of the defendant in an action brought by an indorsee of two promissory notes against the maker thereof the payee of the notes was made a party and filed an answer that the notes sued upon had been transferred by him to the plaintiff as collateral security for his own notes, which had been obtained from him without consideration and through fraud upon false representations upon a pretended sale of a right under letters patent. The court submitted to the jury the question whether the principal notes were given without consideration, and directed that if the jury so found the verdict should be for the intervenor for the amount due upon the collateral notes, otherwise that the verdict for the same amount should be for the plaintiff, and instructed the jury (as the fact was), that there was no evidence of any fraudulent

Trust Co. v. McCoy.

representations respecting the patent right. It was shown that the right had been conveyed as agreed in consideration for the principal notes, and there was no evidence that it was invalid or worthless. It is held that a verdict and judgment for the intervenor for the amount of the collateral notes sued upon can not be sustained.

2. JUDGMENT—*On Principal Notes—Conclusive as to Collateral.* A suit was commenced in Illinois, where the three notes given for the patent right above referred to were made payable, in a court of competent jurisdiction, by the payee thereof, for the amount due upon two of them which had not been transferred, and also for the amount due upon the other note which had been returned to the payee by the indorsee thereof for collection and accounting of the proceeds, and which was secured by the endorsement and transfer of the collateral notes sued upon in this action. A judgment was duly rendered in that action against the maker of the principal notes for the full amount thereof. These are the same notes alleged in the answer of the maker thereof—the intervenor in this action—to have been obtained by fraud and without consideration. It is held that the Illinois judgment is a final determination of the validity of the principal notes.

3. ORDER OF REVIVOR—*Affirmed.* Pending an appeal taken by the plaintiff the principal defendant died, and a motion was made to revive the action against certain persons to whom, it was alleged in the motion, the deceased had transferred money and property, to prevent the plaintiff from collecting its claim in this action. A revivor was not asked against the personal representatives of the deceased nor does it appear that any had been appointed. A revivor was ordered against the heirs of the deceased, including the alleged trustees, who were also heirs. On appeal by the alleged trustees or holders of the funds and property referred to, the order of revivor is affirmed.

4. REVIVOR—*Against Personal Representatives—When Unnecessary.* The liability of the principal defendant having been admitted and established by the judgment referred to in the second paragraph, and the only issue being the question to whom the liability is due, that issue may be determined without a revivor against the personal representatives of the defendant who died after the judgment was rendered.

5. JUDGMENT—*Satisfaction—Reversal.* A transcript of a release of the judgment in favor of the intervenor against P. H. McCoy, given and filed by the intervenor after the appeal

therefrom had been taken, having been filed in this court and this judgment being reversed, it is held that upon a proper issue to be made and proof of such satisfaction the intervenor should be adjudged to pay the amount of such judgment to the plaintiff.

Appeal from Finney district court. Opinion filed March 9, 1912. Judgment reversed and order of revivor affirmed.

*W. R. Hopkins,* and *R. J. Hopkins,* for appellants Hattie Armstrong *et al.*

*W. B. Lowrance, Chauncey Brown,* and *Milton Brown,* for appellant Illinois Trust Company.

*A. Hoskinson,* and *R. W. Hoskinson,* for appellee James S. Griggs.

The opinion of the court was delivered by

BENSON, J.: In this action the plaintiff trust company, the indorsee of two promissory notes, sought recovery from the defendant, McCoy, the maker of the notes. The answer of McCoy alleged that the notes had been transferred by the payee, J. S. Griggs, to the Wm. R. White Co., as collateral security for notes given by the payee to that company for an interest in a patent right, which transaction Griggs had discovered to be fraudulent. The answer further alleged that judgment had been recovered in a circuit court of Illinois by the White company against Griggs on the notes given for the patent right, which judgment was still in force, but that the trust company still held the collateral notes upon which this action was brought. On this answer, McCoy asked that Griggs and the White company be made parties to the action. A general denial was filed in reply to this answer, and a motion was made by the trust company for judgment on the pleadings, which was overruled, and the motion of McCoy to bring in the new parties was sustained. Thereupon Griggs appeared voluntarily but the White company did not ap-

pear, and no further steps were taken against it.
Griggs answered that he had given three promissory
notes for $500 each to the White company, of Bloom-
ington, Ill., "without consideration and through fraud,"
the company having pretended to sell to him certain
territory and right to sell a patent gate in Texas, and
that there was no consideration for the notes, and that
he had indorsed the McCoy notes in suit to the White
company as collateral security only for his own notes.
He also pleaded that the White company had obtained a
judgment against him on the three notes he had so
given for the patent right for $1500 and interest, and
"that upon the rendition of said judgment . . . he
was entitled to the possession of the (McCoy) notes."
An amendment to this answer stated that the White
company represented that they were engaged in the
manufacture and sale of the patented gate, which was
a new and novel article; that they were making large
sales of territory and of gates; that these representa-
tions were false; and that he was induced thereby to
give his own notes and to transfer the collateral notes.
The prayer was for the possession of the collateral
notes sued upon and for judgment against McCoy
thereon. A motion to strike out this answer was over-
ruled. A reply was filed thereto and the cause was
tried, the appellant voluntarily assuming the affirma-
tive.

The only issue was upon the answer of the inter-
venor, Griggs, to determine whether he or the trust
company should recover against McCoy, who made
no defense. It appeared from the evidence that the
White company was engaged in manufacturing and
selling a gate at Bloomington, Ill., under letters
patent from the United States. Griggs negotiated
with that company at Bloomington for an interest
in the patent, but did not then buy it. A repre-
sentative of the company joined him on his return
to Kansas, and at Newton he signed the three notes

before referred to, bearing date at Bloomington, Ill., and payable there. He then went with the agent to Garden City, where the agent examined the mortgage security which had been given to secure the McCoy notes, then held by Griggs, which notes were offered as collateral security to his own notes. The agent then left with the papers, and later the White company, having accepted the notes of Griggs with the McCoy notes as collateral security and accompanying real-estate mortgage securing them, executed a conveyance to Griggs of the patent right for a county in Texas, as agreed upon, and sent it to him by mail. Afterward one of the Griggs notes was indorsed with the McCoy notes and mortgage as collateral security to the trust company, appellant. After the maturity of the other Griggs notes, in a correspondence and effort for settlement between an attorney for the White company and Griggs, it being ascertained that the trust company held the other note, it was obtained by the attorney in order to effect a collection or settlement of the whole liability of Griggs upon the three notes, under an arrangement between the White company and the trust company that the latter should have a proportion of the amount collected. The proposed settlement failed, and thereupon an action was commenced by the White company upon the three notes in the circuit court of McLean county, Illinois, and judgment was rendered therein for the amount of the notes. This is the judgment pleaded by both McCoy and Griggs.

No evidence was offered of any false representations or fraud in the sale of the patent right. The conveyance of the right was received by Griggs, who testified that he attempted to make sales of gates and territory; that he learned from people he talked with that the scheme was being denounced by the papers and he was unable to handle it; that he tried to sell it but was not adapted to it; and that he was unable to handle it at all.

Representatives of the White company and of the

Trust Co. v. McCoy.

trust company testified to the transfer of the Griggs notes and the McCoy notes and mortgage, as collateral, to the trust company before maturity for a sufficient consideration. It is claimed that their cross-examination shows that the latter had knowledge of the transaction in which the Griggs notes were given, and is not an innocent purchaser.

The court instructed the jury that there was no evidence of fraud in the sale of the patent right, but still submitted to them the question whether there was any consideration for the Griggs notes given therefor, and directed that if it was found that there was no such consideration they should return a verdict for Griggs against McCoy for the amount of the McCoy notes sued upon, but if such consideration was found a verdict should be returned in favor of the trust company, the appellant, for that amount.

The verdict was for the plaintiff, and, pending a motion for a new trial, the amount was paid by McCoy and satisfaction of the judgment which was afterward rendered was filed by Griggs and entered upon the records of the court, as appears from a certified copy of the release filed in this court. Judgment was also rendered against the trust company for costs.

Passing by the question whether the court should have sustained the appellant's motion for judgment against defendant McCoy on the pleadings, the recovery should have been for the appellant and not for intervenor Griggs. Upon his own answer pleading the Illinois judgment, the validity of the notes which he had given for the patent right had been finally adjudicated. That action was by the actual owner of two of the notes and the rightful holder of the other, and any defense thereto was either tried or might have been tried. He testified that the judgment had not been paid, and it is final. (*Sanford v. Oberlin College,* 50 Kan. 342, 31 Pac. 1089; *McEntire v. Williamson,* 63 Kan. 275, 65 Pac. 344; *Stroup v. Pepper,* 69 Kan. 241,

38—86 KAN.

76 Pac. 825; *Osage City Bank v. Jones,* 51 Kan. 379, 32 Pac. 1096; *Cromwell v. County of Sac,* 94 U. S. 351; *Leslie v. Bonte et al.,* 130 Ill. 498, 22 N. E. 594; *Illinois Conference v. Plagge,* 177 Ill. 431, 53 N. E. 76, 69 Am. St. Rep. 252.) The appellant ought also to have recovered without regard to the Illinois judgment. No defense to the Griggs notes was shown upon the trial. As there was no evidence of fraud in selling the patent right, the conveyance of that right was a sufficient consideration for the notes—the consideration contracted for and received. There was no evidence that the patent was invalid or worthless, and it is immaterial whether the trust company was a holder before maturity and without knowledge of the transaction or not.

The Illinois judgment was pleaded in connection with the claim that the intervenor thereby became entitled to the return of the collateral notes, but the district court properly instructed the jury that this claim could not be sustained and he does not complain of the instruction. It. is said in the brief, however, that the judgment was pleaded to show collusion; but whatever may have been the purpose of introducing it into the case it is an established fact, and must have its legal effect.

The argument is made in this court that the Griggs notes are void because given without the notation, "Given for a patent right," as required by statute. (Gen. Stat. 1909, §§ 5515-5517.) But the Illinois judgment is conclusive upon this matter also. Passing that obstacle, however, the suggested invalidity of the notes was not pleaded in or considered by the district court; only fraudulent representations and want of consideration were pleaded. The notes are dated and made payable in Illinois, where the appellant claims they were finally accepted and the deal closed. Had the defense now suggested been pleaded, the laws of Illinois on the subject might have been considered material and pleaded in reply. But in any event, such

a defense can not be considered in this court at this stage of the litigation. The cause can not now be remanded for the trial of an issue not before tendered.

After the judgment was rendered and the appeal had been taken, defendant McCoy died. Thereupon a motion was made to revive the action against Griggs and Hattie Armstrong and Walter McCoy, as trustees, so-called, of certain property and funds of the deceased; that is, it was alleged in the notice that the deceased had sold the lands which had been mortgaged to secure the notes in suit, receiving notes and cash therefor, part of which had been invested in the name of Mrs. Armstrong, his daughter, and part in the name of Walter McCoy, his son, and $1622.85 paid to Griggs in satisfaction of the judgment on the two notes referred to, and that these dispositions were made to prevent the collection of the plaintiff's demands in this action. The motion was verified, but no other evidence was offered in support of the allegations contained in it except evidence to prove heirship. Mrs. Armstrong and Walter McCoy appeared and objected to the revivor, on the ground that there was no sufficient showing and that the court had no jurisdiction to order it. Thereupon the court made an order reviving the action, not only against Hattie Armstrong and Walter McCoy, who are heirs of the deceased, but included in the order of revivor his other heirs, reciting in the order that the revivor against the two persons named above "ran against them as heirs, and that the question of holding said property in trust by them could be heard hereafter on the merits of the cause." Mrs. Armstrong and McCoy appeal from this order. Their argument is that a revivor against the heirs is improper, the action being a personal one against the deceased, and that it should not have been revived against the alleged trustees without proof of the facts claimed to show the trust. The action was for money only. The mortgage securing the

notes sued upon was not pleaded. The original cause of action in such a case survives against the personal representative. Upon this record, however, a personal judgment against the estate is not important. The liability of the deceased was conceded, and the trial was only to determine to whom it was due. That issue was erroneously decided in favor of the intervenor, Griggs, and if he has received satisfaction of the judgment erroneously rendered in his favor he should be adjudged to pay it to the party entitled to it. (Civ. Code, § 581.) But the plaintiff contends, upon the facts alleged in the motion for revivor, that Walter McCoy and Mrs. Armstrong are also liable to its claims. Without expressing any opinion concerning such alleged liability, no reason is perceived why it may not be determined, upon proper issues to be framed between the plaintiff and the new parties referred to, as contemplated in the order of revivor, which is without prejudice to any defense they may have to the plaintiff's claim. Had a revivor been asked and ordered against the personal representatives of McCoy, in the usual course of practice, Mrs. Armstrong and Walter McCoy might then have been made parties to the action. The same result is reached by the proceedings taken. While the situation is unusual, it is believed that this course is warranted. (Civ. Code, §§ 429, 436.) The other heirs of McCoy may not be necessary parties, but they do not appeal, and that question is not considered.

The motion for revivor as against Griggs, the intervenor, was rightly denied, since he is already a party; and if, as shown by the clerk's certificate, he has entered satisfaction of the judgment so erroneously rendered in his favor, he should, upon a supplemental reply, pleading the fact and a finding of the truth thereof, be adjudged to pay the amount of such judgment to the plaintiff.

The judgment appealed from is reversed, and the cause remanded with directions to proceed in accordance with these views. The order of revivor is affirmed.