### SWIFT v. McFARLAND et al.

(District Court, N. D. Georgia.   July 3, 1914.)

No. 1.

JUDGMENT (§ 828*)—RES JUDICATA—QUESTIONS DETERMINED.

    Where a suit in the state court was based on the construction of a contract by which complainant claimed the right to an undivided half of certain property purchased for a city waterworks system, and judgment was rendered in favor of defendant, such judgment was res judicata of an issue as to whether complainant's right under the contract was

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to an undivided half of the property itself, or only to an interest in the profits to be derived therefrom, involved in a subsequent suit in the federal court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1510–1515; Dec. Dig. § 828.*]

In Equity. Suit by Charles J. Swift against William C. McFarland and another. Dismissed.

Charles J. Swift, of Columbus, Ga., in pro. per.
L. C. Slade and A. W. Cozart, both of Columbus, Ga., for defendants.

NEWMAN, District Judge. A brief memorandum opinion in this case was filed by the court on the 30th of April, 1914. Afterwards, and at the regular term at Columbus, the court was satisfied from statements made by Mr. Swift that there had been a misunderstanding as to the manner in which the case was submitted, and evidence was heard as to what had transpired in the Harris superior court; the question being upon the plea of res judicata filed by the defendants. The record in the Harris superior court is all in evidence, and I have it before me now. This record being in evidence, argument was heard in Columbus and briefs have subsequently been submitted by both parties.

It appears from the record that Mr. Charles J. Swift had some negotiations with Mr. Wm. C. McFarland in 1902, with reference to the purchase of certain property, known as the Blue Springs property, for the purpose of furnishing the city of Columbus with water. There was difficulty in Columbus, at the time, about the water supply being furnished by the Columbus Water Supply Company, then being operated by the receiver of the court. Mr. Swift, according to the record here, was authorized by Mr. McFarland to enter into negotiations for obtaining the Blue Springs property for the purpose named. The real issue in the case seems to be what the arrangement was between Swift and McFarland as to the rights that Swift was to have in the property if obtained. As I understand it, Swift claims that he was to have a half interest in the property for his services in connection with the purchase of the property and its attempted utilization as a source of water supply for the city of Columbus. The bill filed here is a long one, and sets out in great detail the purchase of the property and the subsequent addition to the source of supply of the Barnes Creek property. Swift asserts in his bill that the Blue Springs supply was found to be insufficient, but the addition of what is called the Barnes Creek property to it made what, after careful survey, is thought to be, taking the two together, sufficient to supply the city of Columbus with abundant water.

Mr. Swift, according to his bill, unquestionably worked very hard at the matter of having the Blue Springs property, with the addition named, adopted as the source of supply for new waterworks to be established at Columbus, and asserts his right to a half interest in this property. His prayer is: First, for an injunction restraining Nevius and McFarland from interfering with complainant's possession of the

one-half of the Blue Springs or Barnes Creek places, or from any attempt to oust him from the same; second, that the court grant a temporary injunction, etc.; third, that the agreement in New York be decreed and declared a binding contract and obligation, and that complainant has fully executed the same on his part, and that McFarland and Nevius be estopped by their conduct from disputing the validity of the same, that it be decreed equally binding, according to McFarland's version of the same, in that he and complainant were finally to share the net profits as he aforesaid claims, but that it is not correct that complainant's interests was dependent on his sale to the city at any time, or at all, and that said last claim is made and was made early for the sole purpose of expelling and excluding complainant from any interest whatsoever, and to enable the defendant to defraud complainant and to appropriate all of complainant's time, services, and information, and that an accounting be had of all the rents, issues, profits of said property, and of all services rendered by complainant and moneys paid by said McFarland, and that it be decreed and adjudged that, even taking McFarland's version of the agreement and the acts of complainant in pursuance thereof, and of the services that complainant rendered and was to render as an equivalent of the capital to be advanced by McFarland, a common interest of both in the property be established, and that said Nevius is no bona fide purchaser, and that the deeds to both of said properties be decreed a trust for complainant for one-half interest in the same; fourth, that said agreement and those that were unified with it as to the Barnes Creek property be specifically enforced, and that the said McFarland and Nevius be decreed, compelled, and required to specifically perform his and their part of said agreement, and all obligations thereto incident and therewith connected; and, fifth, a prayer for general relief.

The present question, as stated, is that of res judicata and to determine whether the suit in the Harris county superior court was a full and final determination of the issue between the parties. I understand that question, from the record and from argument of counsel, to be whether or not Mr. Swift was to have an undivided half interest in the property purchased absolutely in consideration of doing what he did and what he was to do in promoting the enterprise of having the property named selected as the source of water supply for the city of Columbus. Mr. Swift claims that he now owns a half interest in the Blue Springs property and the Barnes Creek property, whereas McFarland and Nevius, to whom McFarland has transferred the property, claim that he has no interest whatever.

It appears that Swift took possession of the Blue Springs property, and in 1910 Nevius brought suit against him in the superior court of Harris county, laying demises in Wm. C. McFarland and others. The suit was brought in common-law form, and, as stated, demises were laid both in Nevius and McFarland and others. The defendant Charles J. Swift filed an equitable plea to that suit, in which he set up substantially the same facts that are set up in the bill in this case. The Supreme Court of Georgia, to which that case later went, as will be hereinafter referred to, speaking of this plea, says this (138 Ga. 229, 75 S. E. 8):

"The essence of the equitable defense, as to the Blue Springs place, is that the defendant and McFarland entered into an agreement to buy the property together. McFarland was to put up the money for expenses and for the purchase price, if the land was obtained. Swift, the defendant, gave certain valuable information which he had acquired as to the location, water supply, etc., and was to negotiate for the purchase, and perform certain other services. He fully complied with his agreement, and thus in effect paid his part of the purchase price. For convenience in exploiting the property in connection with a plan to furnish water to the city of Columbus, in which a certain engineering company was to take a part the deed was taken in the name of McFarland, by agreement between him and the defendant, and for the benefit of both. The defendant took possession of the property, and has managed it in accordance with the agreement between him and McFarland on that subject."

Demurrer was interposed to this plea, and was sustained, and the case, as stated, went to the Supreme Court of Georgia. The Supreme Court reversed the ruling of the lower court, and sent the case back to the Harris county superior court for trial. On the trial of the case the jury found for the defendant the land in question.

It is claimed, and may be conceded to be true, that the suit in Harris county superior court was for the Blue Springs property only, and that the verdict as rendered covered only that property. The rights of the parties in this controversy depend upon what the agreement was between Swift and McFarland, that is, as to whether Swift, in consideration of his services in this matter, was to become the owner of a one-half undivided interest in the property, or whether he was to have a half interest in the profits to be obtained by the sale of the property to the city of Columbus for waterworks purposes. Swift contends for the former view of the matter, and McFarland and Nevius for the latter. Was this issue settled and determined against Swift in the Harris county case? This is the question now before the court.

There can be no doubt that the two properties, the Blue Springs property and the Barnes Creek property, were united and, as expressed by complainant in his bill, became one project. The whole record, the bill in this court and the proceeding in the state court, shows this to be true. In complainant's bill, on page 32 he says this:

"The said McFarland consented to the option and deed afterwards in escrow for the Barnes Creek property and for it to become one project with the said Blue Springs property, and with said McFarland's understanding it became subject to all the terms and conditions and agreements original between the said McFarland and your orator as to the said Blue Springs property."

And on pages 36, 37 of the complainant's bill he says this:

"The said Barnes Creek, by and with the consent of the said McFarland, was unified with the said Blue Springs, and they became one project."

So there can be no doubt that the rights of the parties as to the two properties, under the pleadings here, were the same. That is to say, if complainant has a half interest in the Blue Springs property, he has it in the Barnes Creek property also, and under the same contract and by the same agreement. This question was fully tried out and determined in the Harris superior court. Mr. McFarland and Mr. Swift both were witnesses in that case and gave their versions of the matter, and the jury found in favor of McFarland and Nevius.

The law on the subject of res judicata in a case like this is so clear that it hardly needs citation, but in Tioga Railroad v. Blossburg and Corning Railroad, 20 Wall. 137, 22 L. Ed. 331, the following is the first headnote.

"Where, in a judicial proceeding, the matter passed upon is the right under the language of a certain contract to take receipts on a railroad, the judgment concludes the question of the meaning of the contract on a suit for subsequent tolls received under the same contract."

In Lumber Company v. Buchtel, 101 U. S. 638, 25 L. Ed. 1072, in the opinion by Mr. Justice Field, the court says this:

"The extent and effect of a former recovery between the same parties upon the same question raised in a new action have been so often considered and determined by this court that it would be a waste of time to go over the argument and repeat our views on the subject. Our latest expression of opinion, made after deliberate consideration, is found in the case of Cromwell v. County of Sac, 94 U. S. 351. To the reasons there adduced we have nothing to add. And we are of opinion that the second defense is also concluded by the former adjudication. The finding of the referee, upon which the judgment was rendered—and this finding, like the verdict of a jury, constitutes an essential part of the record of the case—shows that no representations as to the quantity of timber on the land sold were made to the defendant by the plaintiff, or in his hearing, to induce the execution of the contract of guaranty. This finding, having gone into the judgment, is conclusive as to the facts found in all subsequent controversies between the parties on the contract. Every defense requiring the negation of this fact is met and overthrown by that adjudication."

In Southern Pacific Railroad v. United States, 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355, one of the headnotes is as follows:

"A right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

A great many authorities could be cited to the same effect. There is no question in my mind whatever that the questions existing between the parties in this case were fully determined in the case in the Harris county superior court, and for this reason the plea of res judicata to that effect, filed as a part of the answer in this case, must be sustained and the complainant's bill dismissed. A decree may be taken to this effect.