CLEMENTS v. EASTERN AIR LINES, Inc., et al.
No. 64-L-1218.

Circuit Court, Dade County.
January 21, 1965.

Kelner & Lewis, Miami, for plaintiff.

William G. Bell, Miami, for defendants.

HENRY L. BALABAN, Circuit Judge.

This cause came on for hearing upon defendants' motion for summary judgment herein filed December 10, 1964. Thereafter, on December 30, 1964, defendants filed a number of affidavits in support of the said motion, viz.—the affidavit of Assistant State Attorney A. P. Goshgarian; affidavit of T. T. Dugan; affidavit of William G. Bell; affidavit of W. C. Molesworth; a second affidavit of T. T. Dugan; and affidavit of Charles Greaves. The court has also examined and considered the depositions of the following witnesses — Donald E. Lohmeyer; Edward T. O'Neill; Wana E. Sampson; Sam Mamula; and S. J. Minissale.

In addition to the affidavits and depositions, as well as voluminous exhibits attached to said affidavits, the court has also considered the basic pleadings, viz.—plaintiff's amended complaint herein filed on June 10, 1964, and defendants' answer to amended complaint filed on June 17, 1964. The court further considered the admissions contained in various answers to interrogatories, as well as the briefs and argument of counsel representing the respective parties hereto.

The gist of the amended complaint is found in the allegations of paragraphs 5 through 9, as follows —

5. That Defendants maliciously intending to unjustly cause the Plaintiff to suffer punishment, to be deprived of his liberty, and to oppress and ruin him, did at Miami, in the County of Dade, State of Florida, prior to the 30th day of August in the year 1961, maliciously conspire to falsely accuse by means of false testimony, to have Plaintiff indicted and convicted of crime under the laws of the State of Florida, and punished by a fine and imprisonment; and did on the 30th day of August, 1961, falsely, wantonly, maliciously, with a reckless disregard for the rights of the Plaintiff, and without reasonable and probable cause, appear in the Office of the State Attorney of the 11th Judicial Circuit of Florida, in and for Dade County, and asserted that the Plaintiff was doing business without a license and four counts of usury and upon such charges, procured an information for the arrest and apprehension of the Plaintiff and caused the Plaintiff to be arrested and confined.

6. At the said time and place, the Defendants, D. E. LOHMEYER, SAM MAMULA, and S. J. MINISSALE, acting as aforesaid did then and there testify falsely under oath to matters concerning the aforesaid charges, to wit: that while employed by the Defendant, EASTERN AIR LINES, INC., the Plaintiff had loaned certain sums of money to persons also employed by the Defendant, EASTERN AIR LINES, INC., and had engaged in this enterprise as a business venture and had charged interest on the aforesaid loans in such sums as to be violative of the Florida statutes.

7. At all times mentioned and at all times material herein, the Defendants, D. E. LOHMEYER, SAM MAMULA and S. J. MINISSALE, knew their aforementioned sworn statements regarding the Plaintiff to be false and that the Plaintiff had not in fact perpetrated the alleged criminal acts or in any other way violated the Florida statutes.

8. As a result of the aforementioned, the Plaintiff appeared as the accused at sessions of the Criminal Court of Record in and for Dade County, Florida, on December 5, 1961, January 8, 1962, and February 12, 1962, and March 29, 1962, wherein in each and every instance the trial of the Plaintiff was continued and carried over until on or about the 11th day of May, 1962, when the State Attorney of the 11th Judicial Circuit of Florida in and for Dade County, ordered the information quashed and announced that no further information would be filed in this case and the Plaintiff was discharged with a termination of the proceedings in favor of the Plaintiff.

9. As a direct and proximate result of the false, malicious, wanton, and unreasonable acts of the Defendants as aforesaid, the Plaintiff has been injured in his credit and reputation in the communitl, and will in the future continue to be injured in his credit and reputation in the community.

The depositions of defendants Lohmeyer, Mamula and Minissale, together with the affidavit of Assistant State Attorney A. P. Goshgarian, show conclusively that defendants did not commit the acts or demean themselves in any degree as alleged in the amended complaint; that they made no charges against plaintiff; that they did not procure an information for the arrest and apprehension of plaintiff and cause his arrest and confinement; that, on the contrary, the state attorney's office was approached by members of Eastern's Security Department in June or July, 1961, who reported having received information from

various Eastern employees pertaining to the existence of usurious loan transactions among the Eastern personnel, and requested his counsel and assistance. Thereafter, the state attorney decided to conduct a broad-scale investigation and, thereupon, an assistant state attorney and an investigator from the state attorney's office proceeded to the Eastern headquarters at Miami International Airport and, for several days, collected names and interviewed witnesses in connection with said investigation. It was during the course of said investigation that plaintiff's name was mentioned as a possible money lender, and he thereupon was brought in and questioned. Plaintiff made certain admissions as to watch sales and repairs, as well as the loaning of money to various Eastern employees, and furnished a letter and statement in his own handwriting touching upon the matter.

The affidavit of Assistant State Attorney Goshgarian, to which reference is above made, states as follows —

2. That in late June 1961 or early July 1962, he and Mike Dougherty, an investigator in the State Attorney's office met with Sam Mamula and D. E. Lohmeyer, members of the Eastern Air Lines, Inc. Security Department.

3. At that meeting Mamula and Lohmeyer reported that allegations had been received from an employee and the union representative of Eastern's mechanic type employees that three other employees (Clayton C. Clements was not one of those originally named) had been making loans and charging interest thereon at rates higher than those permitted by the applicable Florida statutes. These loans had been made to employees of Eastern.

4. I decided that these allegations should be investigated and I, along with Mike Dougherty, and perhaps another investigator from the State Attorney's Office, interviewed a number of Eastern's employees. I also requested the Eastern Security Office to furnish me with copies of any statements they received from employees during the course of their investigation to determine whether any Eastern rules and regulations had been violated.

5. During the course of this investigation of the above allegations, the name of Clayton C. Clements was brought up by some of the employees being interviewed either by the State Attorney's Office or the Eastern Security Department or both. These allegations were investigated and the employees making the allegations were interviewed by a representative of the State Attorney's Office and their statements were taken.

6. *It was determined by the State Attorney's Office, based on certain of these employees' statements (employees Otis Huston, Joshua Lockwood, Lawton Davis and Dewey E. Kesse)* that an Information should be filed against Clayton C. Clements charging him with one count of doing business without a license and four counts of usury. Such an Information was filed on August 30, 1961.

7. *No statements* were taken from any member of Eastern's Security Department and the *allegations contained in the Information were not based on any charges or allegations made by any members of Eastern's Security Department.*

8. To the extent that Eastern's Security Department participated in the State Attorney's investigation by furnishing the State Attorney's Office with copies of statements and information secured during Eastern's investigation, such action was in compliance with the requests, advice and instructions given to the members of Eastern's security office by me. *(Italics added.)*

The above is revealing and important in establishing that none of the individual defendants made any charge or statement, sworn or otherwise, and that both the preliminary investigation, filing of information, prosecution, and final dismissal were solely attributable to official acts of the state attorney or his assistant. No deposition or affidavit has been offered by plaintiff to contradict or counter against the facts set forth in the Goshgarian affidavit.

This state of the record shows that plaintiff cannot possibly prove that the defendants, or either of them, caused or was responsible for the charges preferred by the state attorney; nor that the defendants committed any act toward or against the plaintiff with malice or by false statements, as alleged by plaintiff in his amended complaint.

As to plaintiff's inability to establish lack of probable cause, the court finds that the discharging of plaintiff by Eastern was arbitrated in the year 1961, shortly after the discharge, before a System Board of Adjustment established under the Railway Labor Act (45 U.S.C.A., Secs. 153, 184). Mr. Jason M. Berkman sat as a neutral member of the board and, after hearing testimony and considering the question of whether Eastern had sufficient justification for its discharge of plaintiff, the board concluded, in part, as follows —

. . . There is not the slightest iota of doubt in the Arbitrator's mind that Clements was engaged in an active loan business on Company property and on Company time and off Company property and off Company time. Actually the scope of Clements' activities were amazing. There is no question in the Arbitrator's mind that testimony of witnesses clearly showed that Clements was making usurious loans and was in fact to some extent, conducting some type of business on Eastern Air Lines properties and on Eastern Air Lines time. Your Arbitrator feels that the fact that an employee of Eastern Air Lines is lending money to other Eastern Air Lines employees at usurious rates of interest is detrimental to the best interests of Eastern Air Lines.

The fact that a criminal charge was lodged against Clements and that he successfully defended the criminal charge does not in and for itself indicate that the discharge by Eastern Air Lines was improper.

Clements himself admitted to a list of employees who were doing business with Clements, a few of them buying watches, but the greater majority borrowing money from Clements . . .

It is further to be noted that the Railway Labor Act provides that decisions by a System Board of Adjustment shall be final and binding on the parties thereto. Thus having found and adjudged the controversy as above indicated, it must be held that as a matter of law, there did exist a probable cause which the plaintiff cannot now deny or overcome.

Defendants assert their reliance in good faith upon advice of counsel, and they also assert that plaintiff exercised an election of remedies when he appealed his discharge by Eastern rather than bring an action for wrongful discharge, and that in electing the inconsistent remedy provided under the union-management contract, plaintiff is barred from bringing another action in the courts, citing Scott v. National Air Lines, 150 So.2d 237 (Fla. 1963); Mountain v. National Air Lines, 75 So.2d 574 (Fla. 1954); and O'Neill v. Eastern Air Lines, 153 So.2d 744 (3rd Dist. Fla. 1963).

Defendants further contend that the res judicata doctrine applies in this instance, and point out that following the decision of the System Board of Adjustment, plaintiff then brought an action in the United States District Court for the Southern District of Florida on July 19, 1963, wherein he asked the court to set aside the findings of the System Board of Adjustment. On September 3, 1963, the court granted a summary judgment against plaintiff, and thereafter reaffirmed the ruling by denying a petition for rehearing on November 7, 1963. Hence, once again, a court of law sat in judgment on the discharge issue and ruled against plaintiff's contentions. On the matter of res judicata as applicable to the facts of this case, defendants cite Cromwell v. County of Sac, 94 U.S. 351. The court stated on page 352 —

"In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, *but as to any other admissible matter which might have been offered for that purpose.*"

The same rule was applied in Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597 in which the court stated —

"The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Cromwell v. County of Sac, 94 U. S. 351, 352. The judgment puts an end to the cause of action, which cannot again

162

be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment."

Having determined that plaintiff cannot prove his principal charges of false arrest and malicious prosecution, or any conspiracy on the part of defendants in connection with his arrest or incarceration, and being of the opinion that he has heretofore elected his remedy in the premises and has suffered adverse decisions upon the point in issue both at the hands of administrative bodies exercising quasi-judicial functions and in the United States District Court to which the final appeal was taken, the court has reached the conclusion that defendants' motion for summary judgment should be granted and this litigation terminated.

Accordingly, it is ordered and adjudged that the pleadings, depositions, admissions and affidavits on file in this cause show that there is no genuine issue as to any material fact and that the defendants are entitled to a judgment as a matter of law. It is further ordered and adjudged that defendants' motion for summary judgment be, and the same is hereby granted, and judgment is hereby entered and awarded to, for and on behalf of the defendants, severally, and against the plaintiff, Clayton Clements. It is further ordered and adjudged that plaintiff take nothing by this suit and that same stand dismissed with prejudice, with costs to be taxed against plaintiff at a further hearing to be held for such purpose. It is further ordered and adjudged that the clerk shall forthwith remove this dismissed cause from the trial calendar.